**STATE of Missouri at the relation of LANDMARK KCI BANK, Relator,**

v.

**Honorable Ward B. STUCKEY, Associate Circuit Judge, Platte County, Missouri, Respondent.**

**No. WD 34801.**

Missouri Court of Appeals, Western District.

Nov. 15, 1983.

Thomas J. Wheatley, John C. Craft and Karen M. Iverson, Kansas City, for relator; Lathrop, Koontz, Righter, Clagett & Norquist, Kansas City, of counsel.

Max W. Foust and Stephen D. Steinhilber, Kansas City, for respondent; Morris & Foust, Kansas City, S. Preston Williams and Thomas E. Barzee, Jr., N. Kansas City, of counsel.

ORIGINAL PROCEEDINGS IN MANDA-
MUS OR ALTERNATIVELY IN
PROHIBITION

Before SOMERVILLE, P.J., and PRITCHARD, DIXON, MANFORD, KENNEDY, NUGENT and LOWENSTEIN, JJ.

PRITCHARD, Judge.

These extraordinary proceedings for writs of mandamus or for prohibition have as a basis the identical (Count II) petitions of Raymond E. Glasnapp and Harry A. Morris against Landmark Bancshares and Landmark KCI Bank (cases Nos. CV 182–1065–CC, and CV182–1064–CC) filed in the Circuit Court of Platte County, Missouri.

According to the Exhibits filed in this court, pursuant to stock purchase agreements, Landmark Bancshares agreed to purchase the shares of common stock owned by Glasnapp and Morris in the Kansas City International Bank and Trust Company. Glasnapp and Morris were called the "control group", having the majority of shares, of that bank, which became the wholly owned subsidiary of Bancshares under the name Landmark KCI Bank. In return for their shares, Bancshares gave Glasnapp its non-negotiable promissory note in the amount of $319,252 and a like note to Morris for $120,266, each to bear 12% annual interest and each to be due on August 3, 1982. KCI Bank was not obligated on either of these notes.

On August 20, 1982, Glasnapp and Morris filed identical claims against Bancshares and KCI Bank and in Count II of each it was alleged, "3. Defendant Landmark Bancshares Corporation and defendant Landmark KCI Bank did wrongfully and fraudulently agree and conspire together to injure plaintiff and in pursuance thereof, (a) Did intentionally devise a plan to allow defendant Landmark Bancshares Corporation to withhold payment on said note. (b) Did so conspire to withhold payment on said note intending to cause damage to the plaintiff. (c) Did directly and proximately cause injury to the plaintiff by virtue of their conspiracy and the subsequent refusal of Landmark Bancshares Corporation to pay the note when it became due and owing." Actual damages were alleged and further that the conduct of defendants was willful, wanton and malicious entitling plaintiffs to punitive damages. Count I of each petition was for recovery against

Bancshares alone on the notes and accrued interest.

Bancshares filed timely response to the petitions, but KCI Bank did not, it having been served on August 26, 1982. It appears from the affidavit of one of KCI Bank's attorneys that his office received copies of the pleadings on or about September 2, 1982; that he was out of the city until September 7, 1982, at which time he reviewed the pleadings and conferred with other attorneys in the office about them; that he was out of the city again until September 17, 1982 when he learned that service of process on Bancshares had been accomplished on September 9, 1982; and he had forgotten that he had first reviewed the pleadings on September 7th and mistakenly believed that any pleading of KCI Bank would be timely filed on October 8, 1982.

On October 1, 1982, Glasnapp and Morris and their attorneys appeared before respondent and took default judgments against KCI Bank on Count II only of their respective petitions. For Glasnapp, a judgment was entered for $335,310 actual and $164,690 punitive damages; and for Morris $126,315.54 actual and $250,000 punitive damages. The petitions herein ensued asking that respondent be compelled to set aside the default judgments on the mandamus petition, and alternatively that he be prohibited from exercising jurisdiction to enforce the default judgments.

 KCI Bank says that respondent was without jurisdiction to enter the default judgments because Counts II of the petitions wholly failed to state claims for relief. Whether the petitions assert relief under the "prima facie tort doctrine" as claimed by Glasnapp and Morris under *Porter v. Crawford & Co.,* 611 S.W.2d 265 (Mo. App.1980), or under some other theory such as a conspiracy to induce one party to breach his contract with another under the general rule of 16 Am.Jur.2d, Conspiracy, Section 60, p. 273, pose questions of law for the trial court to determine, and it was clearly invested with the power and the jurisdiction to determine the questions of

stating claims for relief. See the case of *State ex rel. George Morasch, II, v. Honorable William M. Kimberlin,* 654 S.W.2d 889 (Mo. banc 1983). [In which three judges concurred with the majority opinion of Donnelly, J., and two concurred in the opinion concurring in result of Blackmar, J., this making it in effect a four judge majority opinion.] There the court approved the early case of *State ex rel. Union Depot Ry. Co. v. Southern Ry. Co.,* 100 Mo. 59, 61, 13 S.W. 398 (1890), where it was said, "where the action or course which a court is about to adopt is such that it has lawful power to take, it should not, ordinarily, be prohibited from taking it." And "For instance, where a court has jurisdiction to render judgments, in ordinary civil causes, it would be manifestly improper to issue a writ of prohibition against it on an application alleging that it was about to pronounce such a judgment on a petition which did not state of a cause of action, but which the trial court had held sufficient, * * *." The *Morasch* court further noted, at page 891, "We are persuaded that we should not continue the unfettered use of the writ of prohibition to allow interlocutory review of trial court error." And as in the *Morasch* case, it need not be determined whether respondent was right or wrong in ruling the question of law in the case. That is a matter, along with the issue that the default judgments were obtained by fraud, which may be considered on direct appeal, after there shall be a final judgment, if there be one entered against KCI Bank and Landmark Bancshares, which appeal will not be an inadequate remedy, as here contended, by reason of the partial peremptory order in mandamus below ruled. For the foregoing reasons, the alternative preliminary order in prohibition is quashed as having been improvidently granted.

 Because Glasnapp and Morris pleaded a right to punitive damages and prayed for the same, their claims were not limited to recovery on the written instruments, and were therefore unliquidated. Rule 74.09 contemplates that it is *only* where the suit is founded upon a written instrument, or

upon a judgment of any court of record, the court shall assess the damages and give final judgment. "A default admits the traversable allegations of the petition constituting the plaintiffs' cause of action and the defendant's liability thereunder, except that where the damages are unliquidated, the default is no admission of the amount of damages claimed, which then becomes a matter of proof. (Citing cases and authority.)" *Sumpter v. J.E. Sieben Construction Company,* 492 S.W.2d 150, 153[8–11] (Mo. App.1973). See also *Smith v. Sayles,* 637 S.W.2d 714, 717[3–10] (Mo.App.1982). The Sieben case holds further, with citation of other case authority at page 155[17], that where the damages are not ascertainable by a written instrument, the defaulting defendant, as well as the plaintiff, has the option of a jury for the inquiry of damages and has the right to be heard to mitigate damages or even to defeat the action by showing that no damage resulted to the plaintiffs by the conduct alleged against the defendant. This authority is reason enough to direct the trial court to set aside the damages portions of the default judgments.

But there are other compelling reasons why the judgments for damages be set aside. "Co-conspirators are joint tort-feasors and their liability is joint and several." *Byers Bros. Real Estate & Ins. Agency, Inc. v. Campbell,* 329 S.W.2d 393, 399[11] (Mo. App.1959). In *State v. Cook,* 400 S.W.2d 39, 40[2] (Mo. banc 1966), it was said, "Our rule as to compensatory damages in tort actions, which is the universal rule, is: 'all who are guilty of participating in the wrongdoing are jointly and severally liable for the whole damage, and the judgment must be in one amount and against all who are not discharged.' (Citing cases.)" *Yarrington v. Lininger,* 327 S.W.2d 104, 111[17] (Mo.1959), holds that where several joint tort-feasors are sought to be held liable for a single injury, there must be only one final judgment in the same amount against all who are held liable. See also 49 C.J.S. Judgments, Section 36, p. 88.

▮ Section 537.060, RSMo 1978, provides that "Defendants in a judgment founded on an action for the redress of a private wrong shall be subject to contribution, * * *." In *Missouri District Tel. Co. v. Southwestern Bell Tel. Co.,* 338 Mo. 692, 93 S.W.2d 19, 23[5–8] (1935), it was held that the doctrine of contribution is not founded on contract, but is based on the principle that equality of burden as to a common right is equity and that wherever there is a common right the burden is also common, and that in an action for contribution, only ratable or proportional reimbursement is sought and recoverable. What this means is that where there are two alleged tort-feasors, as here, there can only be one final judgment in one amount, for which each defendant is jointly and severally liable, and that if there be contribution between them it can be no more than one-half the amount of the single judgment. In this case if the amount of the default judgment against KCI Bank be allowed to stand, there could possibly be a final judgment against Bancshares in a different amount, thus impairing those defendants' rights to ratable contribution. This, of course, is a further reason to require that the default judgments as to damages be set aside. See further *Barr v. Nafziger Baking Co.,* 328 Mo. 423, 41 S.W.2d 559, 564[12–15] (1931), holding that as pointed out in *Neal v. Curtis & Co. Manufacturing Co.,* 328 Mo. 389, 41 S.W.2d 543 (1931), a judgment against joint tort-feasors is single and cannot be split up between the different parties. "There cannot therefore be two judgments for different amounts against the two defendants here for the same tort."

The appropriate procedure for handling the matter of damages in a multiple defendant tort claim where two defendants defaulted and their liability thus stood admitted, was approved in *Electrolytic Chlorine Co. v. Wallace & Tiernan Co.,* 328 Mo. 782, 41 S.W.2d 1049, 1052, et seq. [9–12] (1931). There, the verdict as to liability as to defaulting defendants was held in abeyance until the question of damages was settled as to all defendants, and plaintiff presented his evidence of damages as to all defendants during the subsequent trial of

non-defaulting defendants. That procedure should be followed here.

The preliminary order in mandamus is made peremptory in these respects: Respondent is directed to set aside the default judgments as to damages and to hold in abeyance the default judgments as to liability until there be a trial of the case against Bancshares, at which time the evidence of damages as to it and KCI Bank may be presented.

SOMERVILLE, C.J., and MANFORD and LOWENSTEIN, JJ., concur.

KENNEDY, J., dissents in part in separate opinion filed.

DIXON and NUGENT, JJ., concur in separate dissenting opinion filed by KENNEDY, J.

KENNEDY, Judge, concurring in part; dissenting in part.

I concur with the principal opinion in its holding that the assessment of damages must be set aside, but I dissent from its holding that *State ex rel. Morasch v. Kimberlin,* 654 S.W.2d 889 (Mo.1983), has interdicted our consideration of the merits of the trial court's denial of the motion to set aside the underlying default judgment. I do not concede that *Morasch,* even if retrospective in operation, removes our case from the reach of the writ of prohibition, but I put my dissent on another ground.

I do not think *Morasch* is applicable. Dealing as it does with a procedural matter, it is prospective in its operation and not retrospective. *In re Marriage of Garrett,* 654 S.W.2d 313, 316 n. 6 (Mo.App.1983); *Keltner v. Keltner,* 589 S.W.2d 235, 239 (Mo. banc 1979); *Durham v. State,* 571 S.W.2d 673, 676–677 (Mo.App.1978); *Shepherd v. Consumers Cooperative Association,* 384 S.W.2d 635, 640 (Mo. banc 1964). See Annot., Prospective or Retroactive Operation of Overruling Decision, 10 A.L.R.3d 1371 (1966).

*Morasch* was handed down on August 16, 1983. Our preliminary writ had been issued on June 20, 1983, after considering suggestions in support of and in opposition thereto. The lower court record had been filed here. Relators' and respondents' briefs had been filed, although relators' reply brief was not filed till August 22.

The appropriateness of the writ of prohibition[1] was closely considered and tentatively determined at the preliminary writ stage. Arguments against the appropriateness of the writ are accorded less weight at the final hearing stage. At the latter point the parties have briefed the case, the record is before the court, any disruption to be caused by the writ has already occurred, and there is no reason to defer our ruling upon the merits of the opposing views of the correctness of the trial court's action. *State ex rel. McClellan v. Kirkpatrick,* 504 S.W.2d 83, 85, n. 1 (Mo. banc 1974); *State ex rel. St. Joseph Light & Power Co. v. Donelson,* 631 S.W.2d 887, 892 (Mo.App. 1982). To apply *Morasch* to this case would be to give it retrospective effect, which should not be done.

If relator is correct in its position on the merits of its motion to set aside the default judgment, i.e., that respondent's denial of the motion was arbitrary and a rank abuse of discretion (a question which we do not reach, of course), then by pre-*Morasch* criteria it is plainly a case for extraordinary writ relief. The trial court has abused its discretion in overruling the motion, which may be corrected by prohibition, *State ex rel. Diners' Financial Corporation v. Swink,* 434 S.W.2d 593, 597 (Mo.App.1968); *State ex rel. Government Employees Insurance Company v. Lasky,* 454 S.W.2d 942 (Mo. App.1970). The denial of the motion is contrary to law. *State ex rel. Ashcroft v. Whipple,* 647 S.W.2d 596 (Mo.App.1983). If error, it is surely prejudicial error, of such

1. Throughout this opinion I use "prohibition" to mean both prohibition and mandamus with the understanding that the principles discussed apply to both. Mandamus is used to command the undoing of an act which should have been prohibited if the superintending court had acted before the lower court's challenged action. See Tuchler, Discretionary Interlocutory Review in Missouri: Judicial Abuse of the Writ? 40 Mo.L.Rev. 577, 586 (1975).

dimensions as to cause a reversal upon appeal. *Traders Bank v. Cherokee Investment Company,* 642 S.W.2d 122 (Mo.App. 1982); *Lester v. Dyer,* 518 S.W.2d 213 (Mo. App.1974); *Vaughn v. Ripley,* 416 S.W.2d 226, 228–29 (Mo.App.1967). The error is of "jurisdictional" dimensions, made at the very threshold of the case. Since there is another defendant, the judgment is not final and subject to appeal. Supreme Court Rules 81.05 and 81.06, § 512.020, RSMo (1978). An appeal will be long delayed. The remedy by appeal is therefore inadequate. *State ex rel. Vogel v. Campbell,* 505 S.W.2d 54 (Mo. banc 1974); *State ex rel. Ashcroft v. Whipple,* supra.

In the interest of judicial economy we should go ahead and decide on the merits the issue presented to us. We will have no fuller record after the parties have gone through a lengthy and expensive trial, and we will have no better briefs when the matter is presented to us on appeal. Why then should we leave in place a default judgment which (if relator is correct in its contention that the trial court's refusal to set aside the default judgment was arbitrary and an abuse of discretion, and therefore reversible error, *Traders Bank v. Cherokee Inv. Co.,* supra; *Lester v. Dyer,* supra; *Vaughn v. Ripley,* supra), will topple the judgment and bring the trial to naught? On the other hand, if the default judgment is secure, the parties should be able to proceed with confidence on that basis.

The majority would close its eyes to a fatal flaw in the foundation, then raze the superstructure upon appeal.

The United States Court of Appeals, Eighth Circuit, in *Dunn v. Wyrick,* 679 F.2d 731 (1982), found itself in somewhat the same situation as does this court, and it followed the procedure which I propose above:

> The Supreme Court in *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 1205, 71 L.Ed.2d 379 (1982), adopted a total exhaustion rule, requiring district courts to dismiss habeas petitions containing such mixed claims. We do not apply the total exhaustion rule here to a habeas case in which the exhausted claims had been fully litigated and decided in the federal district court prior to the Lundy decision. In our view, it would constitute a great waste of judicial resources to apply Lundy retroactively and vacate the district court's determination on the merits. The end result of such a retroactive application of Lundy could require the federal district court and this court to reconsider these same claims at another time. This we decline to do without an express direction from the Supreme Court.

*Dunn v. Wyrick* at 733.

I would decide the merits of the trial court's refusal to set aside the default judgment.