**Marvin L. SHELBY,**
**Plaintiff/Respondent,**

v.

**John Joseph SLEPEKIS, Defendant,**

**and**

**Commerce Bank of Blue Hills, N.A.,**
**Defendant/Appellant.**

**No. WD34713.**

Missouri Court of Appeals, Western District.

Jan. 2, 1985.

Rehearing Denied March 5, 1985.

James Borthwick, Benjamin F. Mann, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, for defendant/appellant.

Michael L. Gatrost, Bernard, Gatrost, Rice & Dicavalcante, Kansas City, for plaintiff/respondent.

Before KENNEDY, P.J., and DIXON and CLARK, JJ.

CLARK, Judge.

Commerce Bank of Blue Hills, one of three defendants in this case, has appealed from the judgment entered by the court after a bench trial. Appellant contends the judgment is erroneous as a matter of law and should be reversed outright. We agree, but because the judgment did not dispose of all issues and all parties, it is not a final judgment and the appeal must be dismissed.

The evidence presented no material fact issues, the question for decision in the claim against appellant being whether it was liable to plaintiff because a fraud was perpetrated on plaintiff by a vice-president of the bank. More particularly, the question was whether a relation of principal and agent between the bank and the vice-president was proved as the essential basis for plaintiff's recovery against the bank.

Plaintiff below, Marvin Shelby, was a business owner and a long time customer of the bank. Since 1975, Shelby had dealt with the bank exclusively through John Slepekis, a vice-president and a defendant in the case. Slepekis also acted as a financial advisor to Shelby and was consulted by Shelby regarding an opportunity to purchase a business property in August, 1979. Slepekis undertook to act for Shelby in negotiations with the seller of the property and also handled Shelby's application for a loan from the bank in the amount of $30,000 to be used as a down payment on the purchase.

Shelby's loan was approved and arranged by Slepekis acting for the bank and the funds were available conditioned on the conclusion of negotiations for the real estate purchase. That transaction, however, was never completed. In January, 1980 Slepekis reported to Shelby that the deal had fallen through and the property had been sold to someone else.

At this point, the events which generated this suit and which were alleged to constitute the fraud practiced on Shelby occurred. Slepekis informed Shelby that despite the failure of the intended real estate purchase, Shelby could still have the loan money to use for some other purpose. Shelby responded that he had no need of the funds, particularly as he was already indebted to the bank on other loans. Slepekis then proposed that if Shelby did not need the money, he, Slepekis, did because he wanted to finance a personal business venture of his own. Slepekis suggested that Shelby take the money and then loan it to him on the understanding that Slepekis would repay Shelby in 90 days and Shelby could then repay the bank. Shelby agreed.

Apparently anticipating this turn of events, Slepekis had issued the bank's cash-

ier's check for $30,000 made payable to Mid-Continent Bank where Slepekis had an account in the name of "Friday's Disco" a business entity which operated a tavern. Slepekis was one of the authorized signatories on that account. Slepekis presented Shelby a bank note form to sign for the $30,000 loan. Shelby signed the note but received no money either from the bank or from Slepekis. The form of the cashier's check made it unnecessary for Shelby to endorse the check. Slepekis promptly deposited the check in the "Friday's Disco" account and drew on that account to pay one Nelson for the purchase of the business.[1]

At the time Slepekis arranged the $30,000 loan through Shelby, he told Shelby that he did not want anyone at the bank to know about the loan or that Slepekis had actually received the money himself. As Shelby said he understood the need for secrecy at the time, it was because the bank did not want Slepekis engaging in business other than his work for the bank. Shelby agreed to keep the arrangement confidential between himself and Slepekis. The loan agreement between Slepekis as borrower and Shelby as lender was entirely oral and Shelby received nothing evidencing Slepekis' debt to him.

No one at the Commerce Bank, other than Slepekis, was aware of the fact that Slepekis had actually received the proceeds of the Shelby loan. The transaction, evidenced only by the cashier's check and Shelby's note, was not entered on the bank's records at the time in accordance with normal procedures. Later, the situation came to the attention of Clark Page, the bank president, another defendant in this case. After questioning Slepekis about his dealings with bank funds, Page requested Slepekis' resignation. Slepekis left the bank for other employment February 12, 1980.

The bank remained unaware of the loan by Shelby to Slepekis and eventually called upon Shelby for payment of his note. Shelby in turn requested of Slepekis that he pay Shelby as he had promised but Slepekis was unable or unwilling to comply. Shelby then obtained funds through a loan obtained elsewhere and paid Commerce Bank the balance due on the obligation.

Plaintiff's case against Slepekis was based on the contention that Slepekis had perpetrated a fraud in procuring the loan in that he had no intention of ever repaying plaintiff the sum borrowed. As to Commerce Bank, plaintiff claimed it was jointly liable for the fraud because Slepekis acted in the transaction as agent for the bank. As plaintiff's petition alleged: "That in all events and things herein alleged, Defendant John Joseph Slepekis was acting in and on behalf of Defendant Commerce Bank of Blue Hills within the scope of his agency, employment, service and authority, both express and implied * * *."

Shelby contends the theory of Slepekis' agency is sustainable because the bank caused Slepekis to be placed in a position of authority to make loans and thereby perpetrate the fraud. He also claims that Slepekis had the authority of an implied agent by reason of his activities on behalf of the bank.

■ The relationship of principal and agent and resultant liability of the principal for the acts of the agent may be created by the express grant of authority by the principal or, absent express agency, the relation may be one of implied or inferred agency or apparent agency. The evidence in this case did not show Slepekis to be the agent of the bank in his transaction with Shelby under any concept of agency.

■ There was no evidence and Shelby does not contend that Slepekis had any express authority from the bank to arrange loans to bank customers with the object of

---

**1.** A sidelight of interest is the circumstance concerning Nelson. Through Slepekis, an irregular loan had been made by the bank to Nelson in the amount of $17,500. The loan was described as "unbooked." Later investigation disclosed that when Nelson was paid by Slepekis from the Friday's Disco account, Nelson then retired his debt to the bank. Whether this was prearranged as part of the Shelby transaction does not appear.

procuring loan funds for himself. The scheme was entirely for Slepekis' own benefit and was conducted with the objective of concealing the transaction from the bank. The facts immediately preclude any claim of express agency.

■ Implied or inferred agency is that relationship which exists by reason of actual authority given implicitly by the principal to the agent and is often inferred from a course of dealing between the alleged principal and his agent. Implied authority depends on the actual relationship between the principal and the agent and not what a third party may have been told or may believe as to that relationship. Agency will not be inferred because a third person assumed it existed. *Molasky Enterprises, Inc. v. Carps, Inc.,* 615 S.W.2d 83 (Mo.App. 1981); *Dudley v. Dumont,* 526 S.W.2d 839 (Mo.App.1975); *Dierks and Sons Lumber Co. v. Morris,* 404 S.W.2d 229 (Mo.App. 1966). Here, the uncontroverted fact that Commerce Bank was entirely ignorant of Slepekis' dealings with Shelby and knew nothing of his self-serving conduct until after he resigned as a bank officer excludes a finding that an implied or inferred agency existed.

■ Finally, an apparent agency may be created where the conduct of the principal is such that an appearance of agency is created. When the principal's acts or conduct lead the public to believe that the agent possesses authority to act in the name of the principal, the principal is bound by the agent for acts within the scope of the agent's apparent authority, but then, only as to persons who, upon faith in such holding out believe, with reasonable ground to believe, that the agent has such authority and in good faith deals with the agent. To find apparent agency, the appearance of authority must have been created by the principal. *Continental-St. Louis Corp. v. Ray Scharf Vending Co.,* 400 S.W.2d 467 (Mo.App.1966); *Jeff-Cole Quarries, Inc. v. Bell,* 454 S.W.2d 5 (Mo.1970).

■ This is not a case of apparent agency because Shelby had no ground to believe that Slepekis had authority from the bank to negotiate loans to bank customers and appropriate the funds himself. To the contrary, Shelby had actual knowledge that the bank did not and would not approve Slepekis' personal ventures with the loan funds. Indeed, Shelby was himself a party to concealing from the bank the fact that Slepekis was the actual beneficiary of a loan intended to finance Shelby's real estate purchase. Shelby did not in good faith deal with Slepekis under any belief Slepekis was acting for the bank as to the personal loan which Slepekis solicited, but instead, Shelby fully understood the transaction to be one arranged by and for Slepekis individually.

In sum, plaintiff's case failed as a matter of law to establish an agency relationship necessary to support recovery against the bank. This determination, however, cannot finally resolve the case because the judgment appealed is not, for the reasons hereafter given, a final appealable judgment and, as a consequence, the discussion of the merits is relegated to the status of dicta. There is no jurisdiction to consider the appeal.

■ The parties have not raised the question of the finality of the judgment. We address that question sua sponte. It is our duty to do so in every case because jurisdiction is requisite and fundamental to any cause presented. *Steinmetz v. Missouri Highway and Transportation Commission,* 645 S.W.2d 36 (Mo.App.1982).

As an aid to tracing the history of this case, the circuit court file was procured on our order to supplement the legal file prepared by the parties. From this source, it is disclosed that Shelby filed his first petition on December 22, 1981 naming only Slepekis as a defendant. In two counts, Shelby sought repayment by Slepekis of the $30,000 loan and $2,000 for repairs made to an automobile. Then and thereafter, Slepekis defaulted and he neither answered nor appeared in any subsequent proceedings.

On May 10, 1982, Shelby filed a first amended petition adding Commerce Bank as a defendant. That petition in Count I asserted the claim of fraud against Slepekis as agent and the bank as principal and contended the two were jointly liable to Shelby for the amount of the loan and interest. Count II repeated the claim against Slepekis alone for the auto repair and Count III sought actual and punitive damages from the bank for injury to Shelby's credit and reputation. The bank filed its answer May 18, 1982.

On September 16, 1982, Shelby caused the case to be set for trial, but he proceeded only against Slepekis. The court on that date entered judgment against Slepekis by default on Counts I and II and awarded Shelby actual and punitive damages.

Shelby next filed a second amended petition on November 16, 1982. That petition duplicated the allegations against Slepekis and the bank and added a fourth count naming Clark Page, president of the bank as a defendant. Answers to the second amended petition were timely filed by the bank and Page.

■ The present judgment appealed by the bank was entered February 17, 1983 after a trial in three interrupted sessions. The judgment awarded Shelby a recovery of $30,000 plus $13,000 interest against the bank on Count I and found the issues for the bank and Page on Counts III and IV. No mention was made of Slepekis or Count II in the judgment. As a consequence, the judgment did not dispose of all issues and all parties because the claims against Slepekis are unresolved.

The absence of any judgment in this case against Slepekis is the direct consequence of the court's failure to render judgment against Slepekis in its entry of February 17, 1983 and the indirect consequence of the filing of the second amended petition.

■ It is first to be noted that in the two pleadings which named Slepekis and the bank as defendants under Count I, the allegation was that they were jointly liable for the fraud committed by Slepekis.

Where two defendants are jointly liable and one defaults, a verdict of liability against the defaulting defendant may not include an assessment of damages. The judgment of liability is interlocutory only and stands in abeyance pending trial on the merits as to liability of the non-defaulting defendant and an assessment of damages if both be found liable. *Electrolytic Chlorine Co. v. Wallace & Tiernan Co.*, 328 Mo. 782, 41 S.W.2d 1049 (1931); *State ex rel. Landmark KCI Bank v. Stuckey*, 661 S.W.2d 58 (Mo.App.1983). Even were it to be assumed that the interlocutory judgment as to liability of Slepekis entered September 16, 1982 survived, that judgment has never matured to finality by assessment of damages. The damages awarded September 16 were premature and the subject was ignored in the judgment rendered after trial.

The September 16, 1982 judgment against Slepekis, however, did not survive, even as an interlocutory judgment because it was rendered a nullity by the subsequent filing of Shelby's amended petition. The interlocutory judgment was based on the petition filed May 10, 1982 and necessarily depended on the process and allegations of that petition. When Shelby filed his second amended petition, the former petition became an abandoned pleading and is not to be considered for any purpose in the case. An abandoned petition becomes a mere "scrap of paper" insofar as the case is concerned. *Welch v. Continental Placement, Inc.*, 627 S.W.2d 319 (Mo.App.1982).

■ An interlocutory judgment cannot rest on an abandoned petition. The interlocutory judgment is by definition tentative requiring final action in the assessment of damages. When the petition under which liability has been determined is abandoned before the judgment matures to finality and a new petition is interposed, the issue of liability is reopened and the prior adjudication lapses.

■ There is no judgment in this case against Slepekis, either on the issue of liability or damages. There is likewise no judgment against appellant Commerce

Bank because its liability for the alleged acts of its agent Slepekis is derivative and could only follow upon a determination that the agent Slepekis was liable. For want of a final judgment, this court is without jurisdiction to consider the appeal.

The appeal is dismissed.

All concur.