In re ESTATE OF Melvin C.
CALDWELL.

Janice M. CORDES, Conservator Ad
Litem, Appellant,

v.

Robert W. CALDWELL, et al.,
Respondents.

Nos. 56916, 56919.

Missouri Court of Appeals,
Eastern District,
Division Four.

July 24, 1990.

John L. Sullivan, Edward M. Roth, Leritz, Reinert & Duree, P.C., St. Louis, for appellant.

R.W. Jacobsmeyer, St. Louis, for conservators.

William R. Bay, Paul J. Puricelli, Thompson & Mitchell, St. Louis, for Reed Holding and Reed Trading, Inc.

HAMILTON, Presiding Judge.

Appellant Janice Cordes (hereinafter Cordes) appeals the denial of her cross-motion for summary judgment on her petition to remove the Conservators of the estate of her incapacitated father Melvin C. Caldwell. She also appeals the dismissal of her petition to set aside the sale of the stock of her father's business, Caldwell Paint Manufacturing Company (hereinafter Caldwell Paint). We affirm.

On March 9, 1982, Melvin C. Caldwell was the victim of a car bombing. *Jacobsmeyer v. Cordes*, 700 S.W.2d 488 (Mo.App.1985). On July 30, 1982, the Probate Division of the Circuit Court of St. Louis County declared him incompetent. *Id.* Respondents, Jimmie Lea Caldwell, Robert Caldwell, R.W. Jacobsmeyer, and Francis J. Wagner were appointed conservators of the estate of Melvin Caldwell. *Id.* at 488–89. Jimmie Lea Caldwell, Melvin Caldwell's wife, was also appointed guardian of his person. Robert Caldwell is Melvin Caldwell's son. R.W. Jacobsmeyer is the attorney for Melvin Caldwell, Caldwell Paint and the Conservators. Francis Wagner is president of Mozel Chemical Products, a supplier for Caldwell Paint. Cordes, who was at the July 29 hearing, opposed the appointment of the four conservators of the estate. Although Cordes wanted to be a conservator, Judge Kohn refused to appoint her because she did not reside in Missouri.

Robert Caldwell and Jacobsmeyer had been running Caldwell Paint since March of 1982. They continued to run the business following the adjudication of incompetency. Robert Caldwell served as president, treasurer and as a director. Jacobsmeyer was vice-president and secretary for Caldwell Paint. Wagner served on the board of directors of Caldwell Paint.

On February 8, 1985, the Conservators filed a petition seeking to sell Caldwell Paint. On that same day, notice of a hearing to be held February 22, 1985, to evaluate the petition for sale, was provided to Cordes.

Cordes appeared with her attorney, John Sullivan, at the February 22 hearing. At that time, she filed a petition for appointment as conservator ad litem, which the trial court took under advisement. At the hearing, Cordes presented witnesses and cross-examined the Conservators' witnesses. Following the hearing, the Probate Court ordered that the 1419 shares of the common stock of Caldwell Paint be sold for $6,761,742.50. It also denied Cordes' peti-

tion for appointment as conservator ad litem. *Jacobsmeyer,* 700 S.W.2d at 489.

On March 27, 1985, Cordes appealed the Order of Sale and the denial of her petition for appointment as conservator ad litem. *Id.* at 488. We dismissed her appeal for lack of standing in the trial court. *Id.* at 490–491.

On January 14, 1986, the Conservators filed with the Probate Court a Memorandum of Closing regarding the acquisition of stock of Caldwell Paint by Reed Holdings, Inc.

Effective June 3, 1986, the Missouri legislature amended RSMo Section 472.010(15) by adding the phrase, "children of a protectee who may have a property right or claim against or interest in the estate of a protectee," to the definition of those "interested persons" who might appeal a judgment of the probate court. The legislature also enacted RSMo Section 475.097, effective June 3, 1986. The new statute changed existing law by adding the phrase "person[s] interested in expectancy, reversion or otherwise," to those entitled to be appointed conservator ad litem.

On July 25, 1986, Cordes filed a Petition for Appointment as Conservator Ad Litem, a Petition to Remove Conservators, and a Petition to Set Aside Sale of Stock. On July 28, 1986, Cordes filed her second application for disqualification of Judge Kohn. Judge Kohn granted the application on July 28, 1986.

On August 21, 1986, Judge Robert Saitz appointed Cordes conservator ad litem for purposes of pursuing her Petition to Remove Conservators and her Petition to Set Aside Sale of Stock.

On January 28, 1988, the Conservators filed a motion for summary judgment with respect to Cordes' Petition to Set Aside Sale of Stock. Thereafter, on February 16, 1988, Cordes filed a First Amended Petition to Set Aside Sale of Stock that added Reed Holdings, Inc., and Reed Trading, Inc (hereinafter the Reed Defendants) as par-

ties. On February 19, 1988, the Conservators filed a Motion for Summary Judgment and a Motion to Dismiss the First Amended Petition to Set Aside the Sale of Stock. On March 9, 1988, the Probate Court sustained the Conservators' Motion for Summary Judgment and dismissed the petition with prejudice.[1] Cordes appealed the dismissal on March 25, 1988.

On March 7, 1989, this Court dismissed Cordes' appeal of the entry of summary judgment in favor of Conservators on the First Amended Petition to Set Aside the Sale of Stock. *In Re Estate of Caldwell,* 766 S.W.2d 464 (Mo.App.1989). We held that the trial court's ruling was interlocutory because it did not apply to the Reed Defendants. *Id.* at 466–467.

In response to this appellate opinion, Conservators filed a Motion for Nunc Pro Tunc Order or, in the Alternative, to Modify Order of March 9, 1988. Cordes filed a Motion to Vacate the March 9 order. On March 22, 1989, the Probate Court heard oral argument on the motions filed by the Conservators and by Cordes. It withheld ruling and granted the Reed Defendants fifteen days to file an appropriate motion with respect to the First Amended Petition to Set Aside Sale of Stock.

On April 14, 1989, the Reed Defendants filed a Motion to Dismiss and/or for Summary Judgment as to the First Amended Petition. The trial court entered an order dismissing the First Amended Petition to Set Aside the Sale of Stock with prejudice as to all parties, on May 19, 1989. It also ruled, in the alternative, that both the Reed Defendants and the Conservators were entitled to summary judgment.

With her action to set aside the sale of stock, Cordes was simultaneously pursuing an action to remove the Conservators. On April 1, 1988, the Conservators filed a Motion to Dismiss and a Motion for Summary Judgment with respect to the Petition to Remove Conservators filed by Cordes on July 25, 1986. Cordes filed a Cross–Motion for Summary Judgment on her Petition to

---

1. The trial court's order purported to dismiss the entire First Amended Petition to Set Aside Sale of Stock, even though Reed Holdings, Inc.

and Reed Trading, Inc. were not parties to the Motion for Summary Judgment.

Remove Conservators on April 26, 1988. The trial court denied Conservators' Motion for Summary Judgment on July 21, 1988. It also denied Cordes' Cross–Motion for Summary Judgment that same day.

On August 3, 1988, Cordes filed her First Amended Petition to Remove Conservators. On August 4, Conservators filed a Motion to Resubmit their Motion for Summary Judgment in response to the First Amended Petition to Remove Conservators. They thus sought to apply their first motion for summary judgment to the First Amended Petition. The Conservators also filed a Motion to Dismiss the First Amended Petition. On September 7, 1988, Cordes filed a Motion to Re–File Cross–Motion for Summary Judgment. On that same day, Conservators filed a Motion for Summary Judgment with respect to Cordes' First Amended Petition to Remove Conservators. On September 22, 1988, the trial court denied Conservators' Motion to Resubmit Motion for Summary Judgment, Motion for Summary Judgment on the First Amended Petition and Motion to Dismiss the First Amended Petition. It also denied Cordes' Motion to Re–File Cross–Motion for Summary Judgment.

On May 19, 1989, the same day the trial court dismissed the First Amended Petition to Set Aside the Sale of Stock, it dismissed with prejudice, on its own initiative, Cordes' First Amended Petition to Remove the Conservators and, in addition, it removed Cordes as Conservator Ad Litem.

Cordes raises two points in her brief. The first concerns the proceeding to remove the Conservators. The second alleges that the trial court erred in granting motions for summary judgment filed by the Conservators and the Reed Defendants as to Cordes' First Amended Petition to Set Aside the Sale of Stock.

In her brief, Cordes' initially framed her first point relied on as follows:

> The Circuit Court erred in dismissing Appellant's petition to remove Conservators and in denying Appellate's [sic] cross motoin [sic] for summary judgment for the reasons that Appellant had presented to the Circuit Court conclusive and unrebut-

ted proff [sic] that the Conservators (A) awarded themselves grossly excessive compensation without court approval, (B) engaged in self dealing by attempting to obtain assets of the estate (C) breached their duty of loyalty by accepting employment contracts from the purchaser of the estate's largest asset while not adequately protecting the estate in the sale and (D) misrepresented to the Probate Court the true extent of their conflict of interest.

At the outset of the argument section of her brief, however, she restated her point relied on as follows:

> In the proceeding to remove Conservators, Appellant's cross motion for summary judgment should have been granted and this court should enter its order removing the Conservators forthwith.

The argument section of Cordes' brief thereafter deals exclusively with the reasons her cross-motion for summary judgment should have been granted. She offers no argument that the trial court erred in dismissing her First Amended Petition to Remove the Conservators. The sole relief she requests is that her cross-motion for summary judgment should be granted and "the order of the Circuit Court reversed and the matter remanded to the Circuit Court on the issue of surcharge only." In a footnote in the argument section of her reply brief, Cordes, for the first time, asks this Court to find that the trial court abused its discretion in dismissing her First Amended Petition and in removing her as a conservator ad litem.

■■■ When a party fails to refer to alleged error in the argument section of her brief, the portion of the appeal concerning that alleged error is deemed abandoned. *Amos v. Altenthal,* 645 S.W.2d 220, 228 (Mo.App.1983); *Mahaffy v. City of Woodson Terrace,* 609 S.W.2d 233, 236–237 (Mo.App.1980). Cordes' footnote in her reply brief is insufficient to revive the issue of the allegedly erroneous dismissal of the petition. Issues submitted in an appellant's brief cannot be enlarged by presentations in a reply brief. *State ex rel. Houser*

*v. St. Louis Union Trust Co.*, 248 S.W.2d 592, 594 (Mo.1952).

■ Moreover, Cordes' point relied on fails to assert why the trial court's dismissal of her petition was an abuse of its discretion as a matter of law. The failure to set out in her point relied on "wherein and why" the trial court's action is claimed to be erroneous violates Rule 84.04(d). Thus, Cordes preserved no issue for review as to the dismissal of her petition. *Thummel v. King*, 570 S.W.2d 679, 684 (Mo. banc 1978). Failure to present argument on that issue exacerbates the situation for

> [i]t is not the function of an appellate court to serve as advocate for any party to an appeal.... When counsel fail in their duty by filing briefs which are not in conformity with the applicable rules and do not sufficiently advise the court of the contentions asserted and the merit thereof, the court is left with the dilemma of deciding that case (and possibly establishing precedent for future cases) on the basis of inadequate briefing and advocacy or undertaking additional research and briefing to supply the deficiency. Courts should not be asked or expected to assume such a role.

*Id.* at 686.

■ The sole part of Cordes' first point relied on, which we can address, is the allegation that her "cross motion for summary judgment should have been granted and this court should enter its order removing the Conservators forthwith."

On April 26, 1988, Cordes filed her Cross–Motion for Summary Judgment on her Petition to Remove Conservators and Response in Opposition to Conservators' Motion for Summary Judgment. On July 21, 1988, the trial court denied that cross-motion. On August 3, 1988, she filed her First Amended Petition to Remove Conservators. Cordes attempted to refile her Cross–Motion for Summary Judgment, but the trial court refused to allow her to do so. She did not, thereafter, file a motion for summary judgment relating to her First Amended Petition. Therefore, the ruling of which she now complains related only to her initial Petition to Remove Conservators, not her First Amended Petition.

■ When Cordes filed her First Amended Petition to Remove Conservators, she thereby abandoned her former petition. *Weir v. Brune*, 256 S.W.2d 810, 811 (Mo. 1953). An abandoned pleading is not considered for any purpose in the case; it becomes a mere "scrap of paper" insofar as the case is concerned. *Shelby v. Slepekis*, 687 S.W.2d 231, 236 (Mo.App.1985). Therefore, Cordes' Cross–Motion for Summary Judgment is no longer a part of the case, and the trial court's denial of said motion is unappealable.

We, therefore, deny Cordes' first point. In doing so, we do not decide whether the trial court abused its discretion in dismissing the First Amended Petition to Remove Conservators with prejudice. We merely hold that Cordes has based her appeal upon an abandoned pleading that has no present relevance to this case. Therefore, she has presented us no reviewable issue.

In her second point relied on, Cordes contends that the trial court erred in granting Conservators' and the Reed Defendants' motions for summary judgment on her First Amended Petition to Set Aside Sale of Stock (hereinafter Stock Petition). She alleges that her petition states a cause of action and that genuine issues of material fact exist concerning that cause of action.

The trial court dismissed the Stock Petition with prejudice. It also ruled that "[i]n the event, upon further appeal, an Appellate Court should reverse either or both of the dismissals, the Court, in the alternative, finds that the Conservators and Reed, either or both, are entitled to a summary judgment...."

If any grounds asserted in a motion to dismiss are valid, we must affirm the trial court's order dismissing the petition. *Green v. Green*, 606 S.W.2d 395, 397 (Mo. App.1980). *See also Butler v. Circulus, Inc.*, 557 S.W.2d 469, 471 (Mo.App.1977). The Conservators' motion to dismiss con-

tends, *inter alia*, that the Stock Petition fails to state a cause of action.[2]

A trial court is justified in granting a motion to dismiss for failure to state a claim upon which relief can be granted if the petition's allegations invoke no principles of substantive law which may entitle a party to relief. *Butler*, 557 S.W.2d at 472. If, however, the facts alleged in the petition and the inferences fairly deducible therefrom, viewed most favorably to the plaintiff, show any ground for relief, the petition should not be dismissed for failure to state a claim upon which relief can be granted. *Id.*

To determine whether the Stock Petition states a cause of action, we must identify that cause of action and the elements that comprise it. *See Young v. Strensrude*, 664 S.W.2d 263, 265 (Mo.App.1984).

The Stock Petition consists of thirteen numbered paragraphs. Paragraph one alleges that Robert Caldwell, Francis Wagner, R.W. Jacobsmeyer, and Jimmie Lea Caldwell are conservators of the estate of Melvin Caldwell. Paragraph two alleges that Reed Holdings, Inc. is a Delaware corporation authorized to do business in Missouri. Paragraph three alleges Reed Trading, Inc. is the successor and assignee of Reed Holdings, Inc., in connection with the sale of stock challenged in the petition. Paragraph four alleges that the Conservators had a fiduciary duty to Melvin Caldwell to protect, preserve, and manage his property, invest it prudently, and account for it faithfully while using "at a minimum, the degree of care, skill and prudence which an ordinary prudent man uses in managing the property of ... others." Paragraph five avers that the Conservators have special skills in relation to management of Melvin Caldwell's property and their appointment was based upon their representation that they possessed such special expertise and skills. Paragraph six alleges the Conservators had a fiduciary duty to act in the best interest of Melvin Caldwell and "to avoid conflicts of interest which would impair their ability to so act."

Paragraphs seven and eight allege that in the fall of 1984, the Conservators engaged in negotiations with Reed Holdings, Inc. on behalf of Melvin Caldwell for the sale of the latter's stock in Caldwell Paint and that on or about February 22, 1985, the Conservators petitioned the Probate Court for authority to sell that stock. Paragraph eight alleges the "Conservators misrepresented and failed to disclose to the Court facts and information material to the Court's determination of whether the sale of Protectee's [Melvin Caldwell's] stock was in Protectee's best interests...."

Paragraph nine states that on or about March 6, 1985, the Conservators entered a Stock Purchase Agreement between Melvin Caldwell's estate and Reed Holdings, Inc. Paragraph ten alleges that the sale of stock was in violation of the "Conservators' fiduciary duty owed the Estate...."

The Stock Petition next enumerates several specific actions that allegedly constitute breaches of the Conservators' fiduciary duties and that were misrepresented or were undisclosed to the trial court. These alleged breaches were that (1) the Conservators sold Melvin Caldwell's stock for a price below its fair market value; (2) the Conservators failed to exercise diligent efforts to obtain the best price for the stock; (3) the Conservators sought no offers for the purchase of Melvin Caldwell's stock or of the assets of the Caldwell Paint prior to the sale of the stock to Reed Holdings, Inc.; (4) the Conservators refused to provide financial data requested by others having an expressed interest in purchasing the stock; (5) the Conservators agreed that, prior to the transfer of stock title to Reed Holdings, Inc., the latter would receive the net income of Caldwell Paint at the expense of Melvin Caldwell; (6) the Conservators consummated the sale of the stock without adequate consideration of the tax consequences to Melvin Caldwell; (7) the Conser-

---

**2.** Conservators' also allege that Cordes 1) had no authority to file the First Amended Petition because her authority was to file only the original petition and 2) failed to sign the petition under oath. Conservators' brief in this Court addresses only the failure of Cordes to state a cause of action.

vators failed to give consideration to alternatives to the sale of stock by which the continued maintenance of Melvin Caldwell and his family could have been ensured for his lifetime; (8) R.W. Jacobsmeyer and Robert Caldwell, in negotiating the sale of Melvin Caldwell's stock, concurrently negotiated on their own behalf employment contracts with Reed Holdings, Inc.; (9) Robert Caldwell negotiated on his own behalf the sale to Reed Holdings, Inc., of fifty of his shares of Caldwell Paint, which shares would have been unsalable if offered independently of the sale of Melvin Caldwell's stock; and (10) the Conservators agreed to a cash price on closing of only $6,056,-589.89, with $1,000,000 to be placed in escrow against which Reed Holdings, Inc. could charge unspecified contingencies.

The final two paragraphs of the Stock Petition allege that, at the time of the sale, the Reed Defendants had knowledge of the Conservators' breaches of their fiduciary duties.

■ Cordes fails to specify in her brief what cause of action she attempted to plead in the Stock Petition. The allegations suggest perhaps two causes of action. The first is fraud. Cordes alleges the Conservators made certain misrepresentations to the Probate Court in connection with the sale of stock.

The requisite elements of a cause of action for fraud are 1) a representation; 2) its falsity; 3) its materiality; 4) the speaker's knowledge of the falsity; 5) his intent that the statement should be acted upon by the other party in the manner contemplated; 6) that party's ignorance of the falsity; 7) reliance on the truth of the representation; 8) the right to rely thereon; and 9) injury. *Stein v. Stein*, 787 S.W.2d 787 (Mo.App. 1990). The Stock Petition, however, alleges only that the Conservators made material misrepresentations to the Probate Court. It alleges no other elements of fraud.

■ A petition attempting to state a cause of action for fraud should contain all of the recognized elements of fraud. *Morrison v. Jack Simpson Contractor, Inc.*,

748 S.W.2d 716, 719 (Mo.App.1988). In addition, the circumstances constituting fraud must be stated with particularity. Mo.R. Civ.P. 55.15. In the present case, because Cordes has done neither, she has failed to plead fraud.

■ In addition, the Stock Petition suggests a cause of action based upon the Conservators breach of fiduciary duties. Cordes is apparently [3] deriving these duties from subsection 1 of Section 475.130 (V.A. M.S.Supp.1990) of the Probate Code that provides as follows:

> Conservator of the estate of a minor or disabled person shall, under supervision of the court, protect, preserve and manage the estate, invest it prudently, apply it as provided in this code, account for it faithfully, perform all other duties required of him by law, and at the termination of the conservatorship deliver the assets of the protectee to the persons entitled thereto. In protecting, preserving, managing and investing the estate, the Conservator of the estate is under a duty to use the degree of care, skill and prudence which an ordinarily prudent man uses in managing the property of, and conducting transactions on behalf of, others. If a conservator of the estate has special skills or is appointed on the basis of representations of special skills or expertise, he is under a duty to use those skills in the conduct of the protectee's affairs. A conservator of the estate is under a duty to act in the interest of the protectee and to avoid conflicts of interest which impair his ability so to act.

Subsection 5 of Section 475.130 enumerates the powers of a conservator. Subsection 6 of Section 475.130 provides that if a conservator breaches one of his duties, while exercising one of these powers, he may be surcharged for losses to the estate caused by the breach. Subsection 6, however, does not provide as a remedy setting aside the entire transaction constituting or occasioning the breach.

---

**3.** Cordes includes no statutory citations in her petition.

In her brief, Cordes relies on Section 472.013 (V.A.M.S.Supp.1990), which provides in pertinent part that,

> [w]henever fraud has been perpetrated in connection with any proceeding or in any statement filed under this code, or if fraud is used to avoid or circumvent the provisions or purposes of this code, any person injured thereby may obtain appropriate relief against the perpetrator of the fraud or restitution from any other person, other than a bona fide purchaser, benefiting from the fraud, whether innocent or not.

Cordes, however, has failed to plead fraud. Thus, she cannot take advantage of Section 472.013.

Both of the actions that Cordes has attempted to plead in the Stock Petition are essentially actions in fraud. She has suggested nothing else to support the remedy of setting aside the sale of stock. Because she has failed to plead fraud, her petition fails to state a cause of action upon which relief can be granted. The trial court therefore committed no error in dismissing the Stock Petition. The second point is denied.

Judgment affirmed.

CARL R. GAERTNER and STEPHAN, JJ., concur.