**VALUE LUMBER COMPANY, a Missouri Corporation, and Ira L. DeJarnette, Trustee of the Ira L. DeJarnette Living Trust, Plaintiffs/Respondents,**

v.

**George Alan JELTEN and Geraldine Jelten, husband and wife, Defendants/Third–Party Plaintiffs/Appellants,**

**and**

**Charles M. Wofford and Cynthia Wofford, husband and wife, Defendants/Third–Party Plaintiffs,**

**and**

**The Barry County Abstract & Title Co., a Missouri Corporation, Defendant,**

v.

**Ira L. DeJarnette, Third–Party Defendant/Respondent.**

**No. 26447.**

Missouri Court of Appeals, Southern District, Division II.

Nov. 8, 2005.

---

Richard L. Anderson, Branson West, for appellants.

Deborah K. Dodge, Hall, Ansley, Rodgers & Condry, P.C., Springfield, for respondents.

**ROBERT S. BARNEY, Judge.**

This appeal arises from a contract for sale of real properties ("the Contract") entered into on September 27, 1999, between Plaintiffs and Defendants.[1] The Contract's terms provided, *inter alia*, that Plaintiffs agreed to sell certain real estate in Barry County, Missouri, to Defendants Jelten and Defendants Wofford for the sum of $276,000.00. Paragraph 4 of the Contract set out, in part, that the "purchase price is due and payable at closing in the form of [Defendants'] assumption of $83,000.00 of [Plaintiffs'] debt to Liberty Bank (assumption or by 'Contract for Deed'), and the balance by cash and/or 'Note and Deed of Trust' to [Plaintiffs] or assigns." [2]

1. Plaintiffs, who were the sellers of the real property at issue, are: Value Lumber Company, a Missouri Corporation ("Value Lumber"); Ira DeJarnette, individually ("DeJarnette"); and, the Ira DeJarnette Living Trust ("the Trust"), (collectively "Plaintiffs"). Defendants, the buyers of the property at issue, are: George Alan Jelten ("Jelten") and Geraldine Jelten, his wife, ("Defendants Jelten"); and Charles M. Wofford and Cynthia Wofford, his wife, ("Defendants Wofford"), (collectively "Defendants").

Defendants Wofford do not join Defendants Jelten in this appeal. Additionally, Barry County Abstract & Title Company was dismissed from this matter without prejudice and, accordingly, does not appeal.

2. The Contract also set out at paragraph 8 that

[c]oncurrent with the closing of this agreement, and as part of the consideration of said closing, [Plaintiffs] agree to pay the sum of $20,000.00 to Liberty Bank, on the $103,000.00 construction note and deed of trust on Parcel 6 herein, bringing the principal balance owed to said bank to a sum of $83,000.00, said balance of which [Defendants] will assume and agree to pay (by 'Contract for Deed'). Said loan has an unused credit of $53,442.36 and [Plaintiffs] will provide fund releases and payments on construction bills in a timely fashion as they become due.

Paragraph 9 set out that

[p]erformance under this agreement is not contingent upon the approval of Liberty Bank for [Defendants'] assumption of the $83,000[.00] principal balance on Parcel 6 herein. Should said approval not be obtained, [Plaintiffs] agree to continue said $83,000[.00] loan in [Plaintiffs'] name and carry back a 'Contract for Deed' with [Defendants]....

Lastly, paragraph 12 expressly stated that

[c]onveyance shall be by corporation warranty deed and resolution, or by general warranty deed, conveying title which is marketable of record, free from lien or encumbrance, except for the herein mentioned lien in favor of Liberty Bank, the balance of which shall be $83,000.00, less unused credits which [Defendants] will assume and agree to pay as part of this agreement by assumption or 'Contract for Deed.'

Ultimately, when Liberty Bank did not permit the assumption of the outstanding construction loan, and after the parties could not agree on the "Contract for Deed" mentioned in the Contract, Defendants Jelten executed a promissory note dated January 27, 2000, made payable to Value Lumber in the principal amount of $83,000.00, with interest at 9 percent, together with a deed of trust on "Parcel 6" (described in the Contract) as security for the note.[3]

This suit was initiated on March 3, 2000, when Plaintiffs filed their initial petition asserting mutual mistake, a scrivener's error, and, thus, reformation of the Contract, claiming the purchase price was meant to be $83,000.00 higher than what was represented in the Contract.

While the suit was pending, the Trust and Value Lumber foreclosed on their deed of trust securing the $60,000.00 and $133,000.00 promissory notes, and the Trust purchased the properties secured by the deed of trust at a foreclosure sale.[4]

■ On December 17, 2001, Plaintiffs filed a second amended petition. In their second amended petition, and for the first time in the litigation, Value Lumber alleged in "Count V—Action on Promissory Note," that Defendants Jelten had executed a promissory note for $83,000.00 made payable to Value Lumber, but had "failed, neglected and refused to pay said note according to its terms." Accordingly, Value Lumber prayed for judgment against Defendants Jelten in the principal sum of $83,000.00, together with interest at the Contract rate from January 6, 2000, reasonable attorneys' fees, costs and disbursements, and interest from the date of judgment.[5]

On September 24, 2002, the trial court granted partial summary judgment in favor of Value Lumber and against Defendants Jelten in the sum of $83,000.00, together with interest at the rate of 9 percent from January 6, 2000. The trial court determined that as to Count V of Value Lumber's second amended petition there was "no genuine issue of material

---

3. Defendants Jelten also executed a promissory note, dated September 30, 1999, made payable to Value Lumber in the principal amount of $60,000.00, together with interest at 9 percent; and a promissory note dated October 30, 1999, in the principal amount of $133,000.00, made payable to the Trust containing the same rate of interest. The latter two promissory notes were secured by a separate deed of trust on properties other than "Parcel 6," as best we discern from the record.

4. Upon foreclosure of the deed of trust, the property serving as security was set for sale on March 8, 2002, at which time Value Lumber purchased the property with a bid of $191,282.85. Defendants Jelten filed a "Notice of Lis Pendens" on March 14, 2002, requesting that the March 8, 2002, foreclosure sale be set aside, because Defendants had not received reasonable notification of the sale. The first sale was then vacated and the successor trustee issued new notices of a future

sale. At the second sale on April 19, 2002, the Trust purchased the property for $185,250.00.

5. While the docket sheet in the legal file reveals Defendants Jelten filed their answer to the second amended petition, the record is devoid of a copy of that particular pleading. We note that Rule 81.12(a) provides that the record on appeal "shall contain all of the record, proceedings and evidence necessary to the determination of all questions to be presented. . . ." "Under this rule the appellant must file a transcript and prepare a legal file so that the record contains all the evidence necessary for a determination of questions presented to the appellate court for a decision." *Envt'l Quality Research, Inc. v. Mercantile Trust Nat. Ass'n.,* 854 S.W.2d 500, 501 (Mo.App.1993).

Unless otherwise specified, all references to rules are to Missouri Court Rules (2005) and all statutory references are to RSMo 2000.

fact and that [Value Lumber] is entitled to Judgment as a matter of law...." As explained in greater detail, below, the trial court then set out that "execution on the judgment on Count V will be stayed until all counts are fully disposed of by this Court."

On September 8, 2003, Plaintiffs filed a third amended petition which, *inter alia,* requested a deficiency judgment against Defendants Jelten in satisfaction of the amounts Defendants Jelten owed on the remaining promissory notes after application of the proceeds from the foreclosure sale. In Count V of the third amended petition, Value Lumber also re-alleged its claim against Defendants Jelten on the $83,000.00 promissory note, replicating Count V of its second amended petition. No mention was made of the trial court's earlier grant of partial summary judgment, which had been "stayed until all counts [were] fully disposed of by [the trial] Court."

A bench trial was held on September 24–30, 2003. The matter was tried to the court based on the allegations of the third amended petition, and the answer and affirmative defenses raised in Defendants' response to the third amended petition, together with Defendants Jeltens' counter-claim and third-party petition against De-Jarnette.

In its March 30, 2004, final judgment, the trial court made numerous findings of fact.[6] The trial court denied Plaintiffs' count seeking to reform the Contract and denied Defendants Jeltens' counter-claim and third-party petition. It also expressly set out that "the previous Order of Partial Summary Judgment in favor of [Value Lumber] and against [Defendants Jelten] in the sum of $83,000.00 together with interest at the rate of 9 [percent] per

annum from and after January 9, 2000, be and the same is made final for purposes of appeal." The trial court also entered judgments allocating credits and awarding a money judgment in favor of Plaintiffs in accordance with their interest in the foreclosed deed of trust. This appeal followed.

Defendants Jelten bring three points on appeal. However, because their first point assists in the disposition of this appeal, we choose only to address it in this opinion.

In their first point, Defendants Jelten allege the trial court's judgment awarding Value Lumber $83,000.00 plus interest on its the unsecured note should have been offset by $53,442.36, which represented the "unused credit" on the Liberty Bank construction loan per terms of the Contract. They maintain the trial court's judgment is excessive, unsupported by the evidence and against the great weight of evidence.

■ As previously related, on September 24, 2002, pursuant to Count V of the second amended petition, the trial court granted partial summary judgment on the promissory note in favor of Value Lumber and against Defendants Jelten "in the amount of $83,000.00 together with interest...." The partial summary judgment was not made appealable. *See* Rule 74.01(b). Rather, the trial court specifically set out in a docket entry that:

[b]ecause said note is linked with the contracts and transactions in issue and because multiple claims exist between the parties, it would not be sound judicial economy nor appropriate to declare [this partial summary judgment] to be final for purposes of appeal. Further, execution on the judgment on Count V

---

6. While the trial court made extensive findings, it made no express mention of the "un-used credit of $53,442.36" as set out in the Contract.

will be stayed until all counts are fully disposed of by this Court.[7]

It is clear that this ruling was based on the operative pleadings in effect at the time of the motion for partial summary judgment, i.e., Plaintiffs' second amended petition, and Defendants' response to the second amended petition.

Also, as previously set out, on September 8, 2003, Plaintiffs filed their third amended petition. In particular, in the third amended petition Value Lumber replicated Count V as stated in its second amended petition relating to its claim for $83,000.00 against Defendants Jelten. The record shows that Defendants Jelten filed their answer and affirmative defenses to Count V of the third amended petition.

■■■ In our analysis, we observe that while the parties have not questioned this Court's jurisdiction over the instant appeal, a reviewing court has the duty to determine its jurisdiction sua sponte. *Beckmann v. Miceli Homes, Inc.*, 45 S.W.3d 533, 538 (Mo.App.2001). " 'A prerequisite to appellate review is that there be a final judgment.' " *Boley v. Knowles*, 905 S.W.2d 86, 88 (Mo. banc 1995) (quoting *Committee for Educ. Equality v. State*, 878 S.W.2d 446, 450 (Mo. banc 1994)). "In order for a judgment to be final, it must dispose of all issues in the case and leave nothing for future determination." *Superlube, Inc. v. Innovative Real Estate, Inc.*,

147 S.W.3d 880, 881 (Mo.App.2004). "Until there is an order dismissing the proceedings or disposing of the cause as final, the trial court retains jurisdiction." *Bauman v. Monia*, 905 S.W.2d 127, 128 (Mo. App.1995).

■■■ As a general rule, "an amendment to a pleading abandons any prior pleadings not referred to or incorporated into the new pleading." *Beckmann*, 45 S.W.3d at 543. Once an amended pleading is filed, it supercedes the pleading which preceded it. *Horne*, 108 S.W.3d at 145. "An abandoned pleading is not considered for any purpose in the case; it becomes a mere 'scrap of paper' insofar as the case is concerned." *In re Estate of Caldwell*, 794 S.W.2d 257, 261 (Mo.App.1990).[8]

■■■ Furthermore, "[a]n interlocutory judgment cannot rest on an abandoned petition." *Shelby v. Slepekis*, 687 S.W.2d 231, 236 (Mo.App.1985). An "interlocutory judgment is by definition tentative requiring final action" by the trial court. *Id.* "An interlocutory summary judgment remains open for reconsideration by the court until such time as a final appealable final judgment is entered." *Horne*, 108 S.W.3d at 145; *see also* Rule 74.01(b). "When the petition under which liability has been determined is abandoned before the judgment matures to finality and a new petition is interposed, the issue of liability is reopened and the prior adju-

7. "An interlocutory summary judgment remains open for reconsideration by the court until such time as a final appealable final judgment is entered." *Horne v. Ebert*, 108 S.W.3d 142, 145 (Mo.App.2003); Rule 74.01(b). Here, given the circumstances of this case, the trial court's grant of partial summary judgment "could [have been] added to, amended, or set aside by the court at any time prior to final judgment." *Norwine v. Norwine*, 75 S.W.3d 340, 344 (Mo.App.2002).

8. There are narrow exceptions to this rule, none of which are applicable here. *See Beckmann*, 45 S.W.3d at 543. We also note that abandoned pleadings may be used "as an admission against the interest of the pleader." *Evans v. Eno*, 903 S.W.2d 258, 260 (Mo.App. 1995). "[A]n admission in an abandoned pleading is not conclusive as to the fact alleged, and does not constitute a judicial admission." *Id.*

dication lapses." *Shelby,* 687 S.W.2d at 236; *see also Beckmann,* 45 S.W.3d at 544.

Here, after the trial court's ruling on Value Lumber's motion for partial summary judgment, Value Lumber filed its third amended petition containing a claim in Count V against Defendants Jelten on the $83,000.00 promissory note. Value Lumber's filing of a new Count V in its third amended petition served as an abandonment of the second amended petition, the petition upon which the motion for partial summary judgment was based. *See In re Estate of Caldwell,* 794 S.W.2d at 261. "In effect, therefore, the trial court ... granted partial summary judgment on a superseded and abandoned pleading." *Horne,* 108 S.W.3d at 145. Accordingly, no recognizable determination has been made by the trial court as to the issue of liability on the $83,000.00 promissory note or whether Defendants Jelten are entitled to an offset of $53,442.36 against any purported liability under the promissory note under consideration.

Reiterating, "[i]n order for a judgment to be final, it must dispose of all issues in the case...." *Superlube, Inc.,* 147 S.W.3d at 881. Here, not all issues in the case were disposed of. Accordingly, we are compelled to dismiss this appeal.

SHRUM, P.J., and BATES, C.J., concur.