Charlie GITTEMEIER, Appellant,

v.

CONTRACTORS ROOFING & SUPPLY
CO., et al., Respondents,

Tamko Roofing Products,
Inc., Respondent.

No. 69846.

Missouri Court of Appeals,
Eastern District,
Division Four.

Oct. 22, 1996.

Ronald A. Norwood and Yvette M. Guerra, Lewis, Rice & Fingersh, L.C., St. Louis, for appellant.

E. Darrell Davis, Davis & Schroeder, St. Charles, Gerard T. Noce and Steven D. Jenson, Evans & Dixon, St. Louis, for respondents.

SIMON, Judge.

Charlie Gittemeier (Gittemeier) appeals from summary judgments granted in favor of Stephen Schulte and his wife, Jerry, (Schultes), Contractors Roofing and Supply Co. (Contractors), a Missouri corporation, and Tamko Roofing Products, Inc. (Tamko), also a Missouri corporation, on four counts of Gittemeier's seven count petition.

On appeal Gittemeier contends that the trial court erred in sustaining the motions for summary judgment as to his claims for: (1) nuisance and (2) trespass against Contractors and Schultes because they have allowed, directed and permitted numerous semi-trailer trucks to block a common driveway; (3) breach of contract and declaratory judgment against Contractors and Schultes because the mutual reciprocal easement expressly limits the use of the common driveway to ingress and egress and they have used the drive for other uses; and (4) nuisance and trespass against Tamko because the contracts between Tamko and its carriers gives Tamko the express right to direct and control the manner and method of its deliveries. Schultes and Contractors filed a motion to dismiss the appeal as moot and Gittemeier filed a motion for sanctions against Contractors and Schultes for filing a frivolous motion to dismiss the appeal. These motions were ordered taken with the case. We deny the motions and affirm the judgment in part and reverse and remand in part.

It is well settled that when considering an appeal from summary judgment, we review the record in a light most favorable to the party against whom judgment was entered. *ITT Commercial Finance v. Mid–Am. Marine,* 854 S.W.2d 371, 376[1–3] (Mo. banc 1993). Our review is essentially de novo. *Id.*[4–6]. The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially. *Id.* The burden on a summary judgment movant is to show a right to judgment flowing from facts about which there is no genuine dispute. *Id.* at 387[9].

A "defending" party may establish a right to judgment by showing: (1) facts that negate any one of the claimant's element facts; (2) that the non-movant has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of any one of the claimant's elements; or (3) that there is no genuine dispute as to the existence of each of the facts necessary to support the movant's properly pleaded affirmative defense. *ITT,* 854 S.W.2d at 381[16].

The non-movant must show—by affidavit, depositions, answers to interrogatories, or

admissions on file—that one or more of the material facts shown by the movant to be above any genuine dispute is, in fact, genuinely disputed. *ITT*, 854 S.W.2d at 381[17]. Where, as here, the trial court grants summary judgment without specifying the basis upon which it was granted, we will uphold the summary judgment if it is appropriate on any theory. *Southwestern Bell Yellow Pages v. Robbins*, 865 S.W.2d 361, 369[14] (Mo.App. E.D.1993).

The record indicates that Gittemeier Properties was the owner of two adjacent plots of land, lots 1 and 2. Charlie Gittemeier is a partner in Gittemeier Properties. Gittemeier Properties agreed to convey to Schultes property adjoining Lot 1, hereinafter referred to as Lot 2. As part of this sale, the parties agreed that a common driveway would be needed to provide a means of access to the lots once the properties were developed. The grant of the mutual, reciprocal easement reads in pertinent part:

> 1. First Party (Gittemeier Properties) and Second Party (Schultes) hereby reserve unto themselves and grant unto each other an easement of ingress and egress over the property ... being the Eastern 15 feet of the tract of land described in Exhibit A (Lot 1) ... and the Western 15 feet of the tract of land described in Exhibit B (Lot 2) ...
>
> 2. The land hereby conveyed shall be used as a common driveway for the benefit of both properties described.
>
> 5. This easement and the covenants herein contained shall run with the land and inure to and be binding upon the successors in title of the respective parties hereto.

Subsequent to the conveyance of Lot 2 to Schultes, Gittemeier Properties conveyed Lot 1 to Gittemeier. Schultes built certain buildings on the property and leased it to Contractors. Stephen and Jerry Schulte are officers and owners of Contractors. Crafton Drive is the common driveway easement for use by Gittemeier's and Schultes' properties.

Gittemeier filed his seven count Third Amended Petition seeking recovery against Schultes, individually, and Contractors for declaratory relief (Count I), preliminary and permanent injunction (Count II), breach of contract (Count III), trespass (Counts IV and V) and nuisance (Counts VI and VII). In his complaint against Tamko, he sought declaratory relief (Count I), preliminary and permanent injunction (Count II), trespass (Count IV) and nuisance (Count VI).

Part of Contractors' operations consist of selling roofing supply materials and appliances to its customers. These materials and appliances are delivered to it by way of semi-trailer delivery trucks from differing manufacturers which arrive during the morning hours and enter into Schultes' facility through a door located to the east of Crafton Drive. Gittemeier alleges, depending upon the number of trucks arriving at the facility, the semi-trailer trucks park on Crafton Drive, clog the drive for hours, and block his vehicles and those of his tenants and their customers. When multiple trucks arrive at the facility at the same time the trucks park on Crafton Drive and allegedly on Gittemeier's property while waiting for other trucks already in the facility to exit so they can unload. He also alleges that the trucks drive onto, park on, and destroy curbing located on his property. In addition, Gittemeier alleges that, by and through its employees, Contractors park its fleet of trucks upon Crafton Drive, use its trucks to block ingress and egress to Lot 1, and allow these trucks to travel onto and park upon his property without his consent.

Tamko is a manufacturer of roofing materials which delivers materials to Contractors by semi-trailer trucks. Gittemeier contends that trucks, under the direction and control of Tamko, park on Crafton Drive, clog the drive for hours, block his vehicles and those of his tenants and their customers, and drive onto, park on, and destroy curbing located on his property. Contractors, Schultes, and Tamko filed answers essentially denying Gittemeier's allegations.

Later, Contractors, Schultes, and Tamko moved for summary judgment as to all counts. In their motion for summary judgment, Schultes, individually, and Contractors contend they are entitled to a judgment as a matter of law because the

uncontroverted facts demonstrate that the adjoining properties are encumbered with a thirty-foot common driveway easement to be used for ingress and egress over the property. In addition, delivery trucks block part of the driveway while waiting to unload, however, blockage of the easement is for short periods and the drivers are asked to block only the Schultes' side of the drive or park offsite until they can unload. Furthermore, the delivery truck drivers are not Contractors' or Schultes' employees, agents, or servants. Finally, the parties called the court's attention to its prior order establishing that washing, parking, and driving vehicles upon a driveway easement are acceptable and intended uses.

In support of their motion, Contractors and Schultes presented affidavits of Jerry and Stephen Schulte. Jerry and Stephen Schulte state that a common driveway was established between Gittemeier's and Schultes' properties for use by the customers of both parties, and that all deliveries are made by persons not employed or controlled by Contractors or the Schultes. Finally, Contractors' employees are instructed to tell delivery truck drivers not to block the driveway and a sign is posted to that effect.

Responding to Contractors' and Schultes' motion for summary judgment, Gittemeier filed an answer to the motion and his affidavit in support. In his answer, Gittemeier contends that Schultes and Contractors have control over the manner in which deliveries are made because they could give the delivery carriers instructions, for example "do not park on Gittemeier's property." In his affidavit, Gittemeier states that the terms of the easement were intended by the parties to be limited to ingress and egress only. Further, delivery trucks have parked on the common driveway for up to an hour and on his property while making deliveries.

In its motion for summary judgment, Tamko contends that it is in the business of manufacturing roofing products and contracts with independent motor carriers to transport and deliver its products to its customers. In addition, it intended to create an independent contractor relationship and at no time intended to create an agency, employer-employee, or master-servant relationship with the carriers it uses. Moreover, the drivers for the carriers were the agents or employees of the carriers. Finally, aside from designating a destination and requiring receipts for each shipment, Tamko did not exercise control, or have the right to control, the operative details of the manner in which the carriers delivered its products to Contractors.

In support of its motion for summary judgment, Tamko presented affidavits of Martin Franks, Traffic Manager of Tamko; Frank Hallacy, Mike Kelly, Larry Kloeppel, James Smith, and William Smith, all of whom are presidents of motor carriers who deliver materials to Contractors for Tamko; and Tamko's contracts for interstate trucking transportation with the five carriers.

Mr. Franks stated that Tamko contracts with independent motor carriers and that Tamko uses five different carriers to ship its goods to Contractors and Schultes. In addition, Tamko did not grant to these five carriers exclusive privileges or rights to transport Tamko products and that these carriers did transport freight for other entities. Moreover, carriers' drivers were agents or employees of the carriers and not the agents or employees of Tamko. Finally, Tamko did not exercise control or have the right to control the manner, method or route of the shipments, never conveyed instructions to the carriers from Contractors or Schultes, never instructed them as to where to park or to trespass upon Gittemeier's property, never exercised control over the timeliness of deliveries or provided carrier's employees with regular employment hours.

Each of the affidavits of the presidents of the five carriers contracted by Tamko to deliver its products to Contractors and Schultes stated that they contracted on a per job basis, were paid on a rate basis—not an hourly or daily one, intended to create an independent contractual relationship and all of their drivers were the employees, contractors or agents of their respective delivery services—not the agents or employees of Tamko. They further stated that Tamko never had control over their employees or

instructed them to park or trespass onto Gittemeier's property.

In response to Tamko's motion for summary judgment, Gittemeier contended in his answer that the contractual provisions between Tamko and the carriers gives Tamko the right and the obligation to provide direction to the carriers not to park on Crafton Drive or trespass upon Gittemeier's property. The five contracts, between Tamko and the carriers, provide that the carrier is to "satisfy Tamko's distinct and particular needs and references regarding motor transportation." Moreover, because Tamko has these abilities, the carriers are Tamko's agents or Tamko, by failing to give instructions, contributed to a trespass.

The trial court granted Contractors' and Schultes' Motion for Summary Judgment as to Counts I, III, IV, and VI and Tamko's motion as to all counts directed to it. Furthermore, the court found that there was no just reason for delay and that the judgments were final.

Gittemeier appeals the trial court's order in its entirety. Subsequently, Gittemeier filed his Fourth Amended Petition for the underlying action in the circuit court. In that petition, Gittemeier did not include any of the counts on which summary judgment was granted.

■ In their motion to dismiss Gittemeier's appeal, Schultes and Contractors contend that by not including these counts in his Fourth Amended Petition, Gittemeier has abandoned the counts and the issues raised on appeal are moot. The general rule in Missouri is that an amended petition operates as an abandonment of an original pleading. *Blum v. Airport Terminal Services*, 762 S.W.2d 67, 71[1] (Mo.App.1988). The cases which have established this rule, however, arise where a plaintiff has attempted to invoke a different theory in his original petition than the one eventually relied on by the court. *Id.* Here, the situation is distinguishable. Gittemeier appeals from summary judgments granted as to four of his claims. Summary judgments are final and may be appealable if so designated. No amendment to Gittemeier's petition could cure the summary judgment order by the trial court. Git-temeier simply amended his petition as to the remaining counts and therefore, it is not necessary to replead the counts to which judgments have been rendered. Any other holding would create unnecessary judicial proceedings. We find no abandonment. Motion denied. We likewise deny Gittemeier's motion for sanctions. Motion denied.

In Gittemeier's first and second points on appeal, he contends that summary judgment was erroneously granted in favor of Schultes and Contractors for the nuisance and trespass claims because they allowed, directed, and permitted numerous trucks to block a common driveway. Gittemeier contends that Schultes and Contractors are liable for the nuisance and trespass caused by their equipment and the equipment of delivery companies which deliver supplies to Contractors.

■ As to their own equipment, Schultes and Contractors admit that Gittemeier's allegations "have not been fully refuted by the pleadings and affidavits, and as such, the trial court was in error to grant summary judgment as to [that] issue." As to their liability for the trucks and equipment of their suppliers, Gittemeier argues that Schultes and Contractors are in control of the delivery trucks and their drivers and are thus liable for their actions constituting nuisance and trespass.

Schultes, individually, and Contractors contend in their motion and through their affidavits that "all materials and equipment delivered to Contractors is delivered by persons who are not employed by or within the control of Contractors" and are not employed by Schultes or within their personal control. Further, a sign is displayed instructing the drivers not to block the driveway, and employees of Contractors are instructed to tell the drivers not to block the driveway and "if they must wait to unload their trucks to move their trucks to the eastern side of the driveway so that [Gittemeier] and his tenants and customers are not blocked from the use of the ... western side of the driveway." Contractors and Schultes contend that these statements establish that they are entitled to judgment as a matter of law because there is

no genuine dispute as to the fact of their control of the carriers or drivers.

Gittemeier, had to show by affidavit, depositions, answers to interrogatories, or admissions that a dispute as to the control Contractors and Schultes have over the carriers exists. *ITT,* 854 S.W.2d at 381[17]. An adverse party may not rest upon mere allegations or denials of his pleadings, but his response shall set forth specific facts showing that there is a genuine issue for trial. *Id.* at 381[16].

Gittemeier contends by affidavit that Schultes and Gittemeier agreed to reserve a mutual reciprocal easement in a private driveway to be used solely for "ingress and egress" and that the delivery trucks have no right to enter Crafton Drive except at the request of Contractors and Schultes because it is a private drive. In his answer to their motion, Gittemeier points to statements made by Stephen Schulte in his deposition. The record on appeal only contains the portions of Stephen Schulte's deposition referenced by Gittemeier. Gittemeier contends that Stephen Schulte admitted in his deposition that Schultes have the ability to provide written instructions to the carriers.

Q. Okay. If you provide instructions to your manufacturers telling them not to park on Crafton Drive, would they abide by those instructions?

A. Yes.

In addition, Gittemeier contends that Schultes have provided some oral instructions to some of the carriers: don't park on Gittemeier's "side of the street;" "don't park on the front lot;" and "don't circle the building" and Schultes admit by deposition that they have some control over at least one of the carriers:

Q. Okay. But you've complained to GAF about that?

A. Those are the people I can control because they use the same drivers.

Contractors' and Schultes' admissions, as indicated in Gittemeier's answer and affidavit, establish a genuine dispute as to an issue of material fact regarding the control Contractors and Schultes have over at least one of their carriers. Therefore, it was not es-

tablished, as a matter of law, that they were entitled to summary judgment. *ITT,* 854 S.W.2d at 381[16]. Thus, Gittemeier's first and second points are meritorious.

In his third point on appeal, Gittemeier contends that summary judgment was erroneously granted in favor of Schultes and Contractors for his breach of contract and declaratory judgment claims because the mutual reciprocal easement expressly limits the use of the common driveway to ingress and egress and they have used the drive for other uses.

As for the breach of contract claim, Schultes and Contractors state in their motion for summary judgment that any prior agreements the parties had, merged into the written easement agreement. When delivery and acceptance of the easement was completed, an interest in the property passed, just as in a deed. *Boatmen's Nat. Bank of St. Louis v. Dandy,* 804 S.W.2d 783, 786[11] (Mo.App. E.D.1990). Therefore, any pre-existing contract merged into the easement and the contract no longer formed a basis for a claim for breach of contract. *Id.*

As for the declaratory judgment claim, Gittemeier's allegations essentially allege that Contractors' and Schultes' conduct exceeded the scope of the easement. If the user of an easement exceeds his right, either in manner or extent of use, he is guilty of trespass and if proven, would allow for a legal remedy of damages. *Macios v. Hensley,* 886 S.W.2d 749, 752[9–10] (Mo.App.E.D. 1994). Therefore, a legal remedy exists to address Gittemeier's allegations. If an adequate legal remedy exists declaratory judgment should not be granted. *City of St. Louis v. Milentz,* 887 S.W.2d 709 711[2–4] (Mo.App.E.D.1994). Gittemeier's point is not meritorious.

In Gittemeier's fourth point on appeal, he contends that summary judgment was erroneously granted in favor of Tamko on his nuisance and trespass claims because the contracts between Tamko and its carriers give Tamko the express right to direct and control the manner and method of its deliveries.

■ Tamko showed, by affidavits of its Traffic Manager and presidents of various carriers, that the drivers were under the control of the carriers which delivered Tamko's goods. The burden shifted to Gittemeier to show a genuine dispute of material fact. *ITT*, 854 S.W.2d at 381[16]. Gittemeier did not do so. Since, Tamko has no control over the carriers, an essential factual element of Gittemeier's claims is disproved. Point denied.

Judgment affirmed in part and reversed and remanded in part.

RHODES, RUSSELL, P.J., and KAROHL, J., concur.