Kevin C. BECKMANN, et al., Respondents,

v.

MICELI HOMES, INC., et al., Defendant/Appellant.

No. ED 78435.

Missouri Court of Appeals, Eastern District, Division One.

May 1, 2001.

Garry Seltzer, Seltzer & Associates, L.C., Clayton, MO, for appellant.

Stephen G. Bell, Karen L. Kramer, St. Louis, MO, for respondents.

RICHARD B. TEITELMAN, Judge.

Plaintiff homebuyers sued the general contractor (Miceli Homes) and a subcontractor (Midwest Floor Company, hereinafter "Midwest") regarding various alleged defects in the construction of their new home. Plaintiffs were granted a default judgment against Midwest when Midwest, having been served, failed to appear or answer the petition; the case remained pending against Miceli Homes. After the court denied Midwest's motion to set aside the default judgment, Plaintiffs filed a second amended petition which named only Miceli Homes as a party defendant and did not incorporate the default judgment against Midwest. Midwest then filed a motion to dismiss it as a party defendant, contending Plaintiffs had abandoned any claim against it as a result of their amended pleading. Midwest now appeals the order denying its motion to dismiss, which was certified as final for purposes of appeal pursuant to Rule 74.01(b), and also appeals the order denying its motion to set aside default judgment. We reverse and remand.

## FACTUAL AND PROCEDURAL BACKGROUND

Kevin C. Beckmann and Betty M. Beckmann (Plaintiffs) purchased a new home built by Miceli Homes, Inc. They subsequently filed a three-count petition which named Miceli Homes as the sole defendant. It alleged that the home was not built in accordance with plans and specifications in that the dormers were not properly constructed, the carpet was improperly installed and "from multiple dye lots," and items on the punch list had not been repaired or corrected. The petition sought "less than $25,000" in damages and alleged breach of contract, breach of warranty and negligent construction as alternate theories of recovery.

Several months later Plaintiffs were granted leave to file their First Amended Petition. It named Midwest, the subcontractor who had installed the carpet during the construction of Plaintiffs' home, as an additional defendant. The amended petition retained the same three counts against Miceli Homes as were pleaded in the original petition, but added three counts against the new defendant, Midwest. The three counts pleaded against Midwest were nearly identical to the ones pleaded against Miceli Homes, except that they were limited to the alleged defects concerning the carpet and carpet installation. Overall damages were sought in the same sum, an amount "less than $25,000."

After Plaintiffs filed their First Amended Petition and obtained valid service of process upon Midwest, Midwest failed to appear in court on the return date and failed to otherwise answer the allegations of the petition. As a result of its failure to appear and answer, the court entered an interlocutory order of default against Midwest on that date, May 4, 1999. It was denominated "Order" and read in full: "Upon application of Plaintiffs, Interlocutory Order of Default is granted against Defendant Midwest Floor Company. Cause remains on docket of May 25, 1999 at 9:00 AM for proceedings against Defendant Miceli Homes, Inc."

On that same date, very shortly after obtaining the above-mentioned interlocutory order of default, Plaintiffs sought and were granted by the court what purported to be a default judgment. The judgment assessed the damages at $12,500. Al-

though it is thus clear from its substantive content that the judgment was of the type that is normally deemed to be a "final" default judgment (that is, one for both liability and damages), and although the judgment was contained on the court's pre-printed "Judgment in Default" form, it nevertheless was denominated as an "*Interlocutory* Judgment in Default." (emphasis added) This was accomplished by means of Plaintiffs' counsel hand-inserting the word "interlocutory" in front of the document's title, "Judgment in Default." Plaintiff asserts—and Midwest does not dispute—that this was done specifically at the trial court's request. Because the case remained pending against Defendant Miceli Homes and the default judgment therefore was not a final judgment in the sense that it disposed of all parties, the trial court expressed concern that unless the word "interlocutory" was inserted the court's clerical staff might mistakenly close the entire case file upon seeing that a "default judgment" had been entered.

When this Default Judgment [1] was taken, no proof of damages was submitted to the court. Plaintiffs' counsel wrote in $12,500 as the amount of damages on the judgment form.

Midwest subsequently filed a Rule 74.05(d) motion to set aside the Default Judgment. The motion was supported by affidavits of "good cause" and "meritorious defense." Specifically, Midwest's corporate president submitted an affidavit asserting various arguable legal theories that would constitute meritorious defenses; and Mr. Dave Vergano, the Midwest employee who had been served with the suit papers by a deputy sheriff, submitted an affidavit asserting that he was unfamiliar with legal documents, did not know what had become of the summons and petition

after he had been served with them, and that his actions were not intentionally or recklessly designed to impede the judicial process. An evidentiary hearing on Midwest's motion to set aside was held on November 4, 1999. Midwest chose to rely solely on its affidavits and not present live witnesses. Plaintiffs presented the testimony of the deputy sheriff who had served the summons and petition on Mr. Vergano. On November 15, 1999, the court entered its order denying the motion to set aside Default Judgment.

Thereafter, Plaintiffs filed a Second Amended Petition. It named only Miceli Homes as a party defendant, and did not mention Midwest or incorporate by reference the Default Judgment against Midwest. It reasserted the previous allegations against Miceli Homes with greater specificity and detail, except that it deleted all allegations related to the carpeting and carpet installation.

Midwest then filed a motion seeking to dismiss it from the action as a party defendant. Midwest argued in its motion that by filing the new pleading which did not name Midwest as a party defendant and did not incorporate the Default Judgment, Plaintiffs had "abandoned" their claims against Midwest. Initially the trial court agreed, and on February 24, 2000 entered its order dismissing Midwest as a party defendant. However, following a hearing on Plaintiffs' timely motion to reconsider that ruling, the court on April 27, 2000 entered an order reversing itself and reinstating the Default Judgment.

Thereafter, Midwest filed a motion requesting the court to reverse its April 27th order and once again dismiss Midwest as a party defendant. On July 13, 2000, the court entered an order denying this mo-

---

**1.** The "Interlocutory Judgment in Default" entered by the court on May 4, 1999 will

hereafter be referred to, for ease of reference, as the "Default Judgment."

tion. Then on August 23, 2000, following Midwest's request, the trial court entered an order amending its July 13, 2000 order, making that order immediately subject to appeal pursuant to Rule 74.01(b) and certifying that there is "no just reason for delay." This appeal follows.

## DISCUSSION

### I. Jurisdiction

▓▓▓ Though neither party has questioned this court's jurisdiction over the instant appeal, a reviewing court has the duty to determine its jurisdiction sua sponte. *Trust by Sherman v. Wilson*, 928 S.W.2d 897, 898 (Mo.App. E.D.1996). "A prerequisite to appellate review is that there be a final judgment." *Boley v. Knowles*, 905 S.W.2d 86, 88 (Mo. banc 1995). A judgment is final for purposes of appeal "only when it disposes of all the issues for all parties in the case and leaves nothing for further determination." *O'Neill v. O'Neill*, 864 S.W.2d 7, 8 (Mo. App. E.D.1993). Rule 74.01(b), however, permits the trial court to designate as final a judgment which disposes of one or more claims but fewer than all claims. *Committee For Educational Equality v. State*, 878 S.W.2d 446, 450 (Mo. banc 1994). "Assuming that there is at least one claim fully resolved as to at least one party," then Rule 74.01(b) grants circuit courts the discretion to declare "that aspect" of its order, action or decree final for purposes of appeal, provided that the court expressly finds "there is no just reason for delay." *Id.* at 453.

▓▓▓ Even when the trial court so certifies its partial judgment as final for purposes of appeal, the trial court's determination is not absolutely conclusive. *Gibson v. Brewer*, 952 S.W.2d 239, 244 (Mo. banc 1997); *Clay County ex rel. County Commission of Clay County v. Harley and Susie Bogue, Inc.*, 988

S.W.2d 102, 109 (Mo.App. W.D.1999). Rather, the reviewing court must still determine whether the order or ruling appealed from is one that finally disposes of at least one claim on the merits, as opposed to a ruling on fewer than all issues which does not finally dispose of the claim. *Id.*

In this case, the only ruling that the trial court expressly certified for appeal pursuant to Rule 74.01(b) was its order of July 13, 2000 denying Midwest's motion to reconsider and set aside its order/judgment of April 27, 2000. The April 27 ruling, in turn, was *solely* a decision refusing to dismiss Midwest as a party defendant after Plaintiffs had filed their Second Amended Petition which named only Miceli Homes as a defendant and which did not incorporate the Default Judgment; the April 27 ruling did not refer to the separate issue of the court's previous denial of Midwest's motion to set aside the Default Judgment upon a showing of good cause and meritorious defense. Nor did it refer to the claim that the Default Judgment was improper because it was not supported by proof of damages.

▓▓▓ This presents us with the question of whether the latter two issues are properly included in this appeal—and if they are not, whether Midwest's entire appeal must therefore be dismissed because it fails to encompass a distinct "judicial unit" under Rule 74.01(b). *Gibson v. Brewer*, 952 S.W.2d at 244. We conclude, from an examination of the language of the court's judgment of August 23, 2000 granting Midwest's "Motion to Amend the July 23, 2000 Order to Allow for an Immediate Appeal," that the trial court intended by its ruling to allow an appeal which included all of these issues, rather than only the issue of its denial of the motion to dismiss Midwest as a party defendant. Accordingly, we have jurisdiction over all of the issues

raised and the appeal is proper under Rule 74.01(b).

### II. Claim That Court Erred In Granting Default Judgment Absent Separate Hearing On, And Proof Of, Damages

Rule 74.05(a) and (b) provide two alternate methods of obtaining a default judgment against a defendant who fails to plead or otherwise respond to a petition: the first provides for an immediate entry of a full default judgment (that is, one assessing both liability and damages) upon proof to the court of damages; the other provides for an interlocutory order of default, which establishes liability only, but then provides for a full judgment of default upon later proof of damages. The rule reads as follows:

**(a) Entry of Default Judgment.** When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules, upon proof of damages or entitlement to other relief, a judgment may be entered against the defaulting party. The entry of an interlocutory order of default is not a condition precedent to the entry of a default judgment.

**(b) Entry of Interlocutory Order of Default.** When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules, an interlocutory order of default may be entered against that party. After entry of an interlocutory order of default, a default judgment may be entered. Any party may demand a jury to assess damages. If a jury is not demanded, the court shall assess any damages.

In its first point relied on, Midwest contends the trial court erred in (1) entering a Default Judgment that was labeled "inter-

locutory" even though it assessed both liability *and* damages, (2) entering a Default Judgment that assessed damages without requiring a separate hearing on damages, and (3) entering the Default Judgment without any proof of damages. The latter contention is correct; the first two are not.

■ It is of no consequence that the court chose to label the Default Judgment "interlocutory" even though it also assessed damages. To hold otherwise would exalt form over substance. § 511.130 RSMo 2000 specifically provides:

> **511.130 Judgment interlocutory against only part of the defendants**
>
> When there are several defendants in a suit, and some of them appear and plead and others make default, an interlocutory judgment by default may be entered against such as make default, and the cause may proceed against the others; but only one final judgment shall be given in the action.

This statute has consistently been interpreted to mean that while a default judgment may be taken against one or fewer than all of several defendants, there nevertheless can be only one "final" judgment in such an action, which must dispose of all the parties to the cause. See, e.g., *Electrolytic Chlorine Co. v. Wallace & Tiernan Co.*, 328 Mo. 782, 41 S.W.2d 1049, 1052 (1931). Thus, even though a default judgment against one defendant in a multi-defendant case might be "final" in virtually every other sense, it nevertheless is held in abeyance and does not truly become final until the claims against the other defending parties are disposed of. See *Wood v. Wood*, 716 S.W.2d 491, 494 (Mo. App. S.D.1986). The Default Judgment entered against Midwest therefore *was* an interlocutory judgment despite the fact that it assessed damages of $12,500,[2] and

---

**2.** This is true notwithstanding the fact that

many older cases in the context of default

would necessarily *remain* an interlocutory judgment until Plaintiffs' claims against co-defendant Miceli Homes were disposed of.[3] Accordingly, the court did not err in requiring that the judgment be denominated "interlocutory."

Nor did the court err in deciding both liability and damages at the same time. Rule 74.05(a) expressly allows for both liability and damages to be assessed in one proceeding. And it has long been the rule in Missouri that "no time interval is required in a default judgment case between entry of the interlocutory judgment on liability and the assessment of damages," and that "it therefore follows that ... the issues of liability and damages may be concluded in a single hearing." *Robson v. Willers*, 784 S.W.2d 893, 896 (Mo.App. W.D.1990); see also *Fawkes v. National Refining Co.*, 341 Mo. 630, 108 S.W.2d 7, 10 (1937). Further, because a defaulting defendant is charged with notice of all subsequent proceedings in the case once he has validly been served with the summons and complaint, a separate notice of a hearing to assess damages is not required. *Id.; Crain v. Crain*, 19 S.W.3d 170, 173–74 (Mo.App. W.D.2000); see also generally, B. Fineberg, *Defaulting Defendant's Right to Notice and Hearing as to Determination of Amount of Damages*, 15 A.L.R.3d 586 (1968).

However, when the plaintiff has sued for an unliquidated sum [4], regardless of whether the judgment is labeled "interlocutory" and regardless of whether the plaintiff taking default has proceeded under Rule 74.05(a) or Rule 74.05(b), there must be some proof of damages in order to validly support an entry of default judgment that assesses damages. The wording of Rule 74.05(a) states that a plaintiff who wishes to use that procedure to take a default judgment may do so only "upon proof of damages...." Likewise, when a plaintiff chooses to proceed under Rule 74.05(b) (that is, to initially take an interlocutory order of default which establishes liability only, and then seek to establish damages at a later date), both the wording of the rule itself and case law make clear that there still must be some proof of damages presented to the court before the interlocutory order of default can validly

---

judgments have traditionally used the phrase "interlocutory judgment" in the narrow sense of meaning an interlocutory order wherein the defaulting party has been found liable by reason of his default but the amount of damages is left for later determination. See 46 Am Jur 2d *Judgments*, § 266 (1994). In its broadest sense, however, an "interlocutory judgment" is simply one which reserves or leaves some further question for future determination. *State ex rel. Great American Insurance Company v. Jones*, 396 S.W.2d 601, 603 (Mo. banc 1965). The Default Judgment in this case was not "interlocutory" in the former sense, but obviously was "interlocutory" in the latter sense, since it left open for future determination the question of liability and damages as to Midwest's co-defendant in the case, Miceli Homes.

3. This is particularly the case regarding multiple defendants where there potentially is joint liability on the part of the defendants. In such cases, a defendant against whom a default judgment has initially been taken may ultimately have his damages reduced, or even be found not liable altogether, if a non-defaulting co-defendant is successful in establishing a defense that is common to all defendants. See *Electrolytic Chlorine Co. v. Wallace & Tiernan Co.*, 41 S.W.2d at 1053; 46 Am Jur 2d *Judgments*, § 282 (1994); 78 A.L.R. 938.

4. A "liquidated" claim is one where the proper amount of damages can be accurately determined with exactness by the court from the allegations contained in the petition or by an attached instrument in writing, such as an agreement between the parties. 46 Am Jur 2d *Judgments*, § 313. Damages are unliquidated if the ascertainment of their exact sum requires the taking of testimony to determine facts upon which to base that sum. *Id.*

be converted to a judgment that assesses damages. Such an interlocutory determination of default "admits the traversable allegations in the petition constituting the plaintiff's cause of action and the defendant's liability thereunder, *except that* when the damages are unliquidated, the default is no admission of the amount of damages claimed, which then becomes a matter of proof." (emphasis added) *Sumpter v. J.E. Sieben Const. Co.*, 492 S.W.2d 150, 153 (Mo.App.1973). Where the plaintiff's claim is for an unliquidated sum, it is error for a default judgment to award damages without "probative evidence" to sustain the award. *Smith v. Sayles*, 637 S.W.2d 714, 718 (Mo.App. W.D.1982). See also 46 Am Jur 2d *Judgments*, § 311.

Midwest notes that the record is in this case is bereft of any proof of damages to support the Default Judgment. Plaintiffs respond by citing St. Louis County Circuit Court Local Rule 42, which requires that a party seeking to obtain a default judgment must furnish the court with a memorandum of the amount claimed before requesting such a judgment,[5] and arguing that they provided such a "memorandum" in this case because their attorney filled in the blank line on the court's preprinted default judgment form to show a stated dollar amount of damages. They then claim that their attorney's sworn signature on the Default Judgment constituted proof of damages: "Counsel for the Beckmanns, as the Affiant, provided the assessment of damages at $12,500. Said evidence as to the damages was sworn to before [the] deputy clerk for Division 33. (LF 17) As such, no further evidence relating to damages was required."

This argument is unpersuasive. First, examination of the Default Judgment shows that counsel did *not* swear to any "evidence" regarding damages. Rather, counsel only swore, in a small preprinted section of the judgment form designed to meet the requirements of the Soldiers and Sailors Civil Relief Act of 1940 (50 App. U.S.C.A. § 501, et seq.), that the defendant corporation was "not now engaged in the military service of the United States." That is not proof of damages. Second, the only "memorandum" shown here was the act of Plaintiffs' counsel in filling in the blank line on the preprinted Default Judgment form specifying the purported damages. That is not proof either—it is merely what the judgment itself recites. "Recitals in a judgment do not prove its validity, where the judgment itself is being directly attacked." *Swallows v. Holden*, 723 S.W.2d 576, 578 (Mo.App. S.D.1987). Third, no matter how liberally the "memorandum" requirement of Local Rule 42 might otherwise be construed, it of course cannot be construed in a manner that conflicts with state law. Rule 50.01. Since Rule 74.05 and controlling case law clearly require that there must be proof of damages to support a default judgment that assesses damages, the Default Judgment in this case was improperly granted.

It does not follow from this, however, as Midwest argues, that the court's actions on May 4, 1999 in adjudging Midwest to be in default are "completely null and void." On the contrary, there is no factual dispute that Midwest was in default on that date for failing to respond to the petition and failing to appear in court. The court

**5.** Local Rule 42 is entitled "Default." It states in full: "(1) Default may be taken in any case when the same is authorized by law or Supreme Court Rule. (2) It shall be the duty of counsel to ascertain that process has been properly and timely served, to furnish a memorandum of the amount claimed before requesting judgments on undefended actions on bonds, bills, notes and accounts, and to provide appropriate documentation in compliance with the Soldiers and Sailors Civil Relief Act of 1940, as amended."

therefore properly entered its separate interlocutory "order" of default shortly before entering the Default Judgment; and the *only* error with respect to the Default Judgment was its assessment of damages absent proof of damages. Accordingly, we hold that Midwest's first point on appeal is granted, in part. The Default Judgment was erroneous to the extent that it purported to assess $12,500 in damages without any supporting proof of damages. However, the effect of this error was not to render the court's determination of default against Midwest completely void, but rather only to leave the Plaintiffs with what amounted to a traditional "interlocutory" order of default against Midwest— that is, an order which had the effect of finding Midwest liable due to its default, but which had not assessed the amount of damages.

### III. *Claim That Court Erred in Denying Motion to Set Aside Default Judgment*

Rule 74.05(d) states in pertinent part as follows:

**(d) When Set Aside.** Upon motion stating facts constituting a meritorious defense and for good cause shown, an interlocutory order of default or a default judgment may be set aside. * * * * Good cause includes a mistake or conduct that is not intentionally or recklessly designed to impede the judicial process.

▆▆▆ In its second point on appeal, Midwest contends the trial court erred and abused its discretion when it denied Midwest's Rule 74.05(d) motion to set aside the Default Judgment. Midwest argues that its affidavits of good cause and meritorious defense filed in support of that motion were clearly sufficient to require that the motion be sustained.

We disagree. The record shows that Midwest failed to meet its burden of establishing good cause. The "good cause" affidavit signed by Mr. Vergano merely stated that he was "unfamiliar" with legal documents, that he had no idea what became of the summons and petition after they were served on him by the deputy sheriff, and that his actions were "not intentionally or recklessly designed to impede the judicial process." It is questionable whether such bare conclusory statements even satisfy the factual pleading requirements of Rule 74.05(d); see *Tinsley v. B & B Engines, Inc.*, 27 S.W.3d 859, 861 (Mo.App. E.D. 2000); *Sears v. Dent Wizard Intl. Corp.*, 13 S.W.3d 661, 664–65 (Mo.App. E.D.2000). Moreover, the statements themselves suggest a "careless attitude," which has been held to preclude a finding of good cause. *Boatmen's First National Bank v. Krider*, 844 S.W.2d 10, 12 (Mo.App. W.D.1992).

▆▆▆ Additionally, at the evidentiary hearing on its motion to set aside, Midwest chose to rely solely on its affidavits of good cause and meritorious defense, electing not to call either Mr. Vergano or its corporate president as a live witness. In determining whether good cause exists, a court is free to disbelieve statements made by a moving party in its affidavits. *McClelland v. Progressive Casualty Ins. Co.*, 790 S.W.2d 490, 493 (Mo.App. S.D.1990). Finally, Midwest has not filed with this court a transcript of the evidentiary hearing. This is significant because Plaintiffs did present a live witness at the hearing, the deputy sheriff who served the suit papers on Mr. Vergano. The deputy may have offered testimony, based on what he personally saw or heard at the time he served process, that challenged the credibility of some of the allegations asserted in Midwest's "good cause" affidavit; without the transcript, we do not know. It is the appellant's burden to file portions of the

transcript so that the record on appeal contains all of the evidence necessary for determination of a question presented to the appellate court for its review; and when an appellant fails to do so, the court will presume that the transcript would have been unfavorable to the appellant. *Delf v. Cartwright*, 651 S.W.2d 622, 624 (Mo.App. E.D.1983). For all of these reasons, the record here does not "convincingly indicate" the trial court abused its discretion by denying Midwest's motion to set aside the Default Judgment. *Dent Wizard*, 13 S.W.3d at 664. Point II is denied.

IV. *Claim That Court Erred By Denying Midwest's Motion To Dismiss It As A Party Defendant Based On Its "Abandoned Pleading" Argument*

In its third point, Midwest contends the trial court erred in denying its motion to dismiss it as a party defendant on the ground that Plaintiffs had abandoned any claim against Midwest when they filed their Second Amended Petition. This is because, they argue, further proceedings were necessary to make the Default Judgment final, and the new pleading neither realleged Plaintiffs' previously stated claims against Midwest nor incorporated by reference the Default Judgment.

The general rule is that the filing of an amended pleading operates as an "abandonment" of the original petition. *State ex rel. Crowden v. Dandurand*, 970 S.W.2d 340, 342 (Mo. banc 1998); *Prayson v. Kansas City Power and Light Co.*, 847 S.W.2d 852, 859 (Mo.App. W.D.1992). Thus, it has been held that an amendment to a pleading abandons any prior pleadings not referred to or incorporated into the new pleading, *Boyer v. City of Potosi*, 38 S.W.3d 430, 434 (Mo.App. E.D.2000), and the abandoned pleading "may not be considered for any purpose." *Welch v. Continental Placement, Inc.*, 627 S.W.2d 319, 321 (Mo.App. W.D.1982).

Our courts have recognized a narrow exception to the abandonment rule: when a plaintiff has suffered a dismissal or summary judgment with respect to some but not all of the claims in his petition, and the plaintiff then files an amended pleading omitting mention of the defendants in whose favor judgment has already been granted, the appellate courts will *not* deem that the plaintiff has "abandoned" his claim against those defendants when the reason for which they were dismissed or granted summary judgment is a problem that is "not correctable" by the plaintiff in an amended pleading. *Prayson v. Kansas City Power & Light Co.*, 847 S.W.2d at 859. The rationale underlying this exception to the general abandonment rule is that "where the reason for dismissal is not correctible [sic] by an amended pleading and the case remains pending against other defendants, the court and the parties should not be required to engage in useless procedural gestures in order to preserve the propriety of the dismissal for review." *R.C. v. Southwestern Bell Telephone Co.*, 759 S.W.2d 617, 619–20 (Mo. App. E.D.1988). See also the discussion of this issue in *Gittemeier v. Contractors Roofing & Supply Co.*, 932 S.W.2d 865, 869 (Mo.App. E.D.1996).

Midwest argues that the general abandonment rule governs and the exception does not apply, since the Default Judgment was only interlocutory and not final. Thus, Appellant contends, Plaintiffs effectively abandoned any claims against it when they filed their Second Amended Petition which did not name Midwest as a party defendant or preserve any claim against Midwest. Plaintiffs, in response, cite *Gittemeier* and *Prayson* and argue that the exception to the rule applies. They contend that since they already had the Default Judgment against Midwest, and since the Rule 74.05(d) motion to set it

aside had been denied, the judgment was "final" for all intents and purposes. Therefore, Plaintiffs conclude, they did not need to replead their claims against Midwest when they filed their Second Amended Petition, as judgment on those claims had already been rendered. It is clear from the record that the court, in denying Midwest's motion to dismiss it as a party defendant due to abandonment, based its ruling on the same reasoning. The trial court's ruling stated that the issue, phrased as a question, was: "[O]nce a default judgment is taken *and liquidated to a sum certain,* does the filing of a second amended pleading with allegations only against a codefendant abandon the claim against the defendant as to which the judgment has been taken?" (emphasis added) The court found that the answer was no, stating in pertinent part: "[A] default judgment *in the amount of $12,500* was entered against Midwest Floor and in favor of Plaintiffs. Midwest Floor filed a motion to set the default aside which was denied. Therefore, the cause of action against Midwest Floor was terminated once a Judgment was entered. No further proceedings against Midwest were necessary." (emphasis added)

However, there was no final judgment against Midwest in this case because there was never any proof of damages and, therefore, the Default Judgment was no more than an interlocutory judgment of default. A mere interlocutory judgment cannot rest on an abandoned pleading:

> The interlocutory judgment is by definition tentative, requiring final action on the assessment of damages. When the

petition under which liability had been determined is abandoned before the judgment matures to finality and a new petition is interposed, the issue of liability is reopened and the prior adjudication lapses.

*Shelby v. Slepekis,* 687 S.W.2d 231, 236 (Mo.App. W.D.1985).[6] Moreover, unlike the situations presented in *Prayson, R.C.* and *Gittemeier,* the Plaintiffs in the case at bar did not have a dilemma in filing its amended petition. As the parties in whose *favor* the interlocutory judgment of default against Midwest had been granted, Plaintiffs easily could have incorporated it in their Second Amended Petition.

No exception to the general abandonment rule applied in this case. Accordingly, Plaintiffs abandoned all of their claims against Midwest when they filed the Second Amended Petition, and the trial court erred when it denied Midwest's motion to dismiss it as a party defendant on the basis of the abandoned pleading.

The judgment is reversed and the cause remanded for further proceedings consistent with this opinion. Upon remand, the trial court is directed to enter its order vacating both the Default Judgment and interlocutory "order" of default entered on May 4, 1999, and granting Midwest's motion to dismiss it as a party defendant. Such dismissal shall be without prejudice.

ROBERT G. DOWD, Jr., P.J. and
MARY RHODES RUSSELL, J., concur.

---

6. We are not called upon by the facts of this case to decide whether, if there had been a "final" default judgment entered against Midwest in the sense that it both adjudged liability and validly assessed damages, Plaintiffs still would have needed to reallege their claims against Midwest in the Second Amended Petition in order not to be deemed to have "abandoned" those claims as a result of the amended pleading. We nonetheless note that reasserting the claims against a defaulting defendant, in cases where some defendants have defaulted and others have not, would only seem to be prudent practice in view of the language of § 511.130 RSMo.