John Anthony PICERNO, Respondent,

v.

Nancy NICHOLS–FOX, Appellant.

No. WD 65520.

Missouri Court of Appeals, Western District.

Oct. 10, 2006.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 21, 2006.

Ronald Aractingi, Kansas City, MO, for appellant.

Richard T. Bryant, Kansas City, MO, for respondent.

Before HOLLIGER, P.J., LOWENSTEIN and ULRICH, J.

HAROLD L. LOWENSTEIN, Judge.

### FACTS

Nancy Nichols–Fox ("Nichols–Fox") appeals the entry of default judgment against her on a suit for breach of contract for attorney's services. The trial court awarded John Picerno ("Picerno") the balance due and expenses associated with a contract for the criminal defense of Nichols–Fox's son.

Nichols–Fox contracted with Picerno to represent her son, Michael James Perry ("Perry"). Kansas had charged Perry with seven criminal counts, including the rape, sodomy, and fondling of his six-year-old daughter. The "Criminal Case Employment Contract" specified a $10,000 non-refundable fee with the balance of $15,000 to be paid in fifteen monthly installments of $1,000 beginning the following month. Both Nichols–Fox and Perry signed the contract on June 18, 2002.

Perry pled *nolo contendre* to two charges of rape in October 2002 and was sentenced to forty-seven months on each charge to run consecutively. Nichols–Fox made five monthly payments of $1,000 per the contract but, thereafter, refused to make the balance of the payments. Picerno filed this suit to recover the balance.

### PROCEDURAL POSTURE

The procedural posture of this case is, at the very least, complicated. In the trial court, Nichols–Fox acted *pro se* for most of this action, filing voluminous pleadings of questionable content. Two different judges entered significant orders in the case. The following is a summary of the significant points in the litigation.

Picerno brought suit for breach of contract in March 10, 2003.[1] The petition claimed damages in the amount of $10,143.44, the outstanding balance due under the contract.[2] Nichols–Fox, acting *pro se*, timely filed "Defendant's Motion to Dismiss and Answer to Complaint and Counterclaims and Demand for Jury Trial." Nichols–Fox counter-claimed for unjust enrichment, fraudulent misrepresentation, and breach of contract; she demanded a jury trial as well.[3] Picerno answered the counterclaims and moved

---

1. Original petition was entitled "Petition for Unjust Enrichment." The trial court, in July 2003, permitted plaintiff to amend by interlineation the caption of the pleading to reflect the Picerno's breach of contract cause of action.

2. Damages included the $10,000 balance remaining on the contract and $143.44 in expenses associated with Picerno's defense of Perry.

3. Nichols–Fox's answer and counterclaim is 54 pages long and contains a number of allegations such as the following:

   "Defendant Nancy Fox does not appreciate being *lied* to by a member of the Missouri Bar, who led her to believe that he would

to dismiss the counterclaims for failure to state a claim upon which relief can be granted. The case was then transferred to Judge McGraw.

On January 30, 2004, over nine months after he had answered Nichols–Fox's cross-claim, Picerno moved to: (1) dismiss Nichols–Fox's counter-petition; (2) strike Nichols–Fox's pleadings for failure to comply with Rule 55.05; (3) dismiss Nichols–Fox's action for failure to plead fraud with particularity; and (4) dismiss Nichols–Fox's pleadings for failure to state a claim for which relief can be granted. Nichols–Fox filed "Suggestions in Support of Defendant's Opposition to Plaintiff's Motion to Dismiss."

On March 3, 2004, Judge McGraw denied Picerno's motion to dismiss but granted his motion to strike the pleadings. The court gave Nichols–Fox fifteen days to "file an amended counter-petition, pleading the facts of the counterclaim with particularity." A copy of the order was mailed to Nichols–Fox.

Nichols–Fox claims the trial court transposed two numbers in her address and sent her copy of the order to the wrong address.[4] Nichols–Fox asserts she did not have notice of the March 3 order until May 18, 2004, when she contacted the court believing her case was proceeding to trial. Fifteen days after she received notice of the order to strike, Nichols–Fox filed a Motion for Reconsideration with suggestions in support.[5] Nichols–Fox did not in any way attempt to comply with the court's March 3 order, even out of time. She did not ask the court for an extension of time to amend her pleadings, nor attempt to show good cause why she had failed to amend her petition within the two weeks allotted by the court.

Picerno moved for an interlocutory judgment on default two days after Nichols–Fox filed her Motion for Reconsideration. Judge McGraw recused herself and the case was transferred to Judge Atwell.

Judge Atwell held a hearing in December 2004. Shortly thereafter, Nichols–Fox filed a pleading denominated as "Counterclaim Reply Brief" essentially opposing Picerno's motion for default judgment.[6] In January 2005, Nichols–Fox, after acting

---

*defend* her son, not coerce him into a plea agreement." (emphasis in original)

"Plaintiff John Anthony Picerno is apparently a "cop-out" or "dump truck" lawyer, incapable of recognizing the most basic legal principles (prosecutorial misconduct, coerced plea, *Faretta* hearing, due process, ABA Model Code of Judicial Conduct)."

Picerno's services "were less than worthless, putting defendant and her son in the position of having to take *years* to clean up the muddle Plaintiff John Anthony Picerno has created." (emphasis in original).

4. Nichols–Fox filed at least two address corrections prior to the March 3, 2004 order. The first was filed on April 8, 2003, and the second on August 11, 2003.

5. Nichols–Fox's "Motion for Reconsideration" asked the "Court to reconsider and is-

sue a correct ruling in that there is no legal basis for her to file an amended petition."

6. In this document, Nichols–Fox purports to "rebut [ ] the trickery, scheme, plan, deceit, and absolute fraud committed by Picerno and his counsel, Richard Bryant." Moreover Nichols–Fox accuses Judge McGraw of "judicial fraud by recusing herself," claims that Roger Nordeen, a prosecutor in Johnson County, Kansas, "falsely signed a notarized complaint" in her son's criminal prosecution. Finally, Nichols–Fox contends that the delay in filing a response to Picerno's motion was due to a clerical error in Jackson County Circuit Court and that it is the court's responsibility to correct clerical errors. This court notes, however, that in February 2004, Nichols–Fox filed "Suggestions in Opposition" to Picerno's motion to strike the pleadings and dismiss the suit. The clerical error alleged by

*pro se* in the matter for over a year and a half, engaged the services of counsel. That month, Judge Atwell held a hearing on Picerno's motion for interlocutory default judgment. Nichols–Fox was represented by counsel at the hearing.

The trial court sustained the Motion for Interlocutory Default on February 10, 2005, and set a damages hearing for March 3, 2005. Nichols–Fox filed a "Motion to Clarify the Order Denying the Motion for Reconsideration and a Demand for Jury to Assess Damages"; both motions were denied by the trial court on March 3, 2005.

The hearing to assess damages was held before Judge Atwell on April 19, 2005. A week later, the court entered judgment in favor of Picerno for $10,140 with interest at 9% per annum to run from May 20, 2003. Nichols–Fox then moved for relief from judgment under Rule 74.06(b) claiming clerical error. That motion was denied, and Nichols–Fox filed this appeal.

## Discussion

Nichols–Fox raises four points. The first three points allege the order striking her pleadings and allotting fifteen days to amend was made in error. The final claim of error relates to the trial court's denial of a jury hearing to assess damages.

### Points I—III alleging error in the March 3, 2004

### Order To Strike The Pleadings

Nichols–Fox contends that the March 3, 2004 order was in error in that: (1) the

order was based on an untimely motion to strike; (2) the trial court abused its discretion in striking the entire answer instead of striking only the offending material;[7] and (3) the order was confusing and patently ambiguous and the trial court failed to clarify in a timely manner.

■ Missouri law requires that any claimed error on appeal must have been raised before the trial court. *Care & Treatment of Burgess v. State,* 72 S.W.3d 180, 184 (Mo.App.2002). An issue raised for the first time on appeal and not presented to or decided by the trial court is not preserved for appellate review. *State ex rel. Nixon v. Am. Tobacco Co.,* 34 S.W.3d 122, 129(Mo. banc 2000). This court cannot consider nor convict the trial court of error on a matter not raised before it. *Johnson v. State,* 768 S.W.2d 158, 160 (Mo.App.1989).

■ Nichols–Fox did not raise any of her complaints regarding the March 3, 2004 order before the trial court. Nichols–Fox does not address any of the three assignments of error raised on appeal in her "Suggestions in Support of Defendant's Opposition to Plaintiff's Motion to Dismiss" of February 6, 2004. Even if this court extends its review to Nichols–Fox's "Suggestions in Support of Motion for Reconsideration of Order of March 3, 2004," this court finds that none of the allegations of error raised here on appeal were pre-

Nichols–Fox relates to the order striking her pleadings and allotting her fifteen days in which to amend.

**7.** This court notes the comments of Judge Atwell at the January 18, 2005 hearing: "I'm also a believer that pro se litigants should be given some flexibility but … this lawsuit has been pending all this time and she has done nothing other than just file a bunch of meaningless papers." When Nichols–Fox's coun-

sel notes that she did file an answer, Judge Atwell replied "the answer is a bunch of gibberish. It doesn't respond to the petition.... It doesn't serve the purpose of an answer. She was given a chance to clean it up and she never did that.... Is it fair to say that a pro se litigant can basically just file nonsense for a year, and then all of a sudden hire a lawyer and say, 'Gee, I want to start over again?' "

sented to the trial court. Her "Motion for Reconsideration" simply states that she "moves this Court to reconsider and issue a correct ruling in that there is no legal basis for her to file an amended petition." Her "Suggestions in Support" are rife with allegations and citations to case law, yet nowhere does she claim the motion to strike was untimely or that the resulting order was confusing.[8] These allegations of error were not brought before the trial court until Nichols–Fox retained counsel and filed a memorandum of law in opposition to Picerno's Motion for Interlocutory Judgment on February 5, 2005. However, this memorandum was filed eleven months after the March 3 order was entered and seven months after the Motion for Reconsideration was filed.

Nichols–Fox contends that "the law generally favors trials upon the merits." Nichols–Fox fails to note, however, as did this court in *McElroy v. Eagle Star Group, Inc.* "[t]he law favors a trial on the merits but also defends the integrity of the legal process and procedural rules and therefore does not sanction the disregard thereof." 156 S.W.3d 392, 402 (Mo.App.2005).

Nichols–Fox chose to act *pro se* in this matter and did not seek the assistance of counsel until late in the process. Nichols–Fox now claims that as a *pro se* litigant, she should have been held to a less rigorous standard. However, this court has repeatedly held that a *pro se* litigant "is bound by the same rules of procedure as those admitted to practice law and is entitled to no indulgence he would not have received if represented by counsel." *White v. State,* 192 S.W.3d 487, 490 (Mo. App.2006).

As Nichols–Fox is held to the same rules of procedure as a litigant represented by counsel, Nichols–Fox should have raised before the trial court her points of error now claimed on appeal. As Nichols–Fox failed to do so, she has consequently failed preserve for appellate review any of her points of error regarding the March 3 order. Points I through III are denied, and the judgment of default is affirmed.

## POINT IV ALLEGING ERROR IN THE FAILURE TO PROVIDE A JURY HEARING TO ASSESS DAMAGES

Before addressing this point, which concerns the method of determining damages, it should first be noted that under Rule 74.05(a) and (b),[9] there are alternative methods of obtaining a default judgment

---

8. Among other allegations in the Suggestions in Support of the Motion for Reconsideration, Nichols–Fox claims the trial court intentionally disregarded her claims:

   It appears to [Nichols–Fox] that the Honorable Peggy S. McGraw did not bother to *read* anything submitted by her on February 6, 2004, merely read *only* what was submitted by [Picerno] and his attorney, in an effort to protect a fellow member of the bar, give [Nichols–Fox] the "pro se" treatment, deny her meaningful access to the courts and the equal protection of the laws and deny her her *right* to a *jury trial.* (emphasis in original).

   Nichols–Fox claims she has been subject to the "pro se" treatment. However, a review of the record and pleadings in this case would show that the trial court was more than lenient with Nichols–Fox.

9. Rule 74.05(a) and (b) provide two alternate methods of obtaining a default judgment against a defendant who fails to plead or otherwise respond to a petition: the first provides for an immediate entry of a full default judgment (that is, one assessing both liability and damages) upon proof to the court of damages; the other provides for an interlocutory order of default, which establishes liability only, but then provides for a full judgment of default upon later proof of damages. The rule reads as follows:

against a defendant who fails to plead or otherwise respond to a petition. *Beckmann v. Miceli Homes, Inc.*, 45 S.W.3d 533, 539 (Mo.App.2001). Subsection (a) provides for an immediate entry of a default judgment in which damages are assessed, while (b) allows an interlocutory order of default which establishes liability but provides for later proof of damages which results in a full judgment of default. Missouri law has long upheld that liability and damages may be assessed in one proceeding. *Beckmann*, 45 S.W.3d at 540. *See Robinson v. Lawson*, 26 Mo. 69 (1857).

■ Another preliminary variable that fits into a determination of damages is whether the amount claimed in the underlying action is an "unliquidated demand," or is in the nature of liquidated damages (where the proper amount of damages may be accurately and exactly determined by the court from the petition or a document such as a contract with a provision for liquidated damages from a default). *See Warstler v. Cibrian*, 859 S.W.2d 162, 165 (Mo.App.1993). (" '[L]iquidated damages' refers to 'that amount which, at the time of contracting, the parties agree shall be payable in the case of breach.' ") (citation omitted). When the plaintiff has sued for an unliquidated sum (where ascertainment of the exact sum requires the taking of testimony to determine facts upon which to base that sum) regardless of whether the default has proceeded under (a) or (b),

there must be some proof of damages in order to proceed to a judgment of default. This is so because, "when the damages are unliquidated, the default is no admission of the amount of damages claimed, which then becomes a matter of proof." *Beckmann*, 45 S.W.3d at 541. If damages sought are unliquidated, the court must hold a hearing to determine the damage amount. The question, as it relates to the appellant's point in the case at bar, is whether or not a jury is so requested by either party under 74.05(b).

■ The trial court here followed (b) and sustained an order of interlocutory default and scheduled a later hearing on damages. Nichols–Fox timely filed a motion for a jury to assess damages pursuant to Rule 74.05(b). The judge denied Nichols–Fox's demand for a jury and conducted a hearing before the court to determine damages. The court entered judgment for Picerno for the remaining balance on the contract and expenses associated with Picerno's defense of Perry in the amount of $10,140 with interest at 9% per annum to run from May 20, 2003. Nichols–Fox now claims the trial court abused its discretion in failing to provide her a jury trial on the amount of damages.

Rule 74.05(b) provides that upon the entry of interlocutory order of default "[a]ny party may demand a jury to assess damages." In the absence of case law that

(a) **Entry of Default Judgment.** When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules, upon proof of damages or entitlement to other relief, a judgment may be entered against the defaulting party. The entry of an interlocutory order of default is not a condition precedent to the entry of a default judgment.

(b) **Entry of Interlocutory Order of Default.** When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules, an interlocutory order of default may be entered against that party. After entry of an interlocutory order or default, a default judgment may be entered. Any party may demand a jury to assess damages. If a jury is not demanded, the court shall assess any damages.

states otherwise, the plain language of Rule 74.05(b) mandates that the trial court provide a jury to assess damages when an interlocutory judgment of default is entered, if so requested. Under the mandate of the rule and the absence of contrary case law, the trial court erred in not providing a jury to assess damages as requested under 74.05(b).

Rule 74.05(b) does not state a requirement that the damages sought be liquidated or unliquidated in order to obtain a jury determination of the judgment amount. There appear to be no cases on point with regard to the issue of whether damages to be ascertained in the hearing following the adjudication of a default have to be unliquidated in order for either side to be entitled to a jury trial or bench trial. The respondent Picerno, argues that the damages here were readily ascertainable, and there was no need to have the matter submitted to a jury. Picerno's point is true—the contract called for a certain number of payments, and there was, or is, no real dispute as to when the appellant stopped paying, so it was needless to have a jury make the same determination the judge did. However, although there are appellate cases which involve negligence claims where a default has been declared in which there are issues as to actual and/or punitive damages, and the opinions state the rule allows either party to make a jury demand where the amount is unliquidated, *Crowe v. Clairday*, 893 S.W.2d 400, 403 (Mo.App.1995); *Smith v. Sayles*, 637 S.W.2d 714, 719 (Mo.App.1982), the clear language of the rule does not mandate that damages be unliquidated for there to be an allowance of a jury trial.

In this case, even though there might be difference of opinion regarding the amount of Picerno's expenses, and little room for difference on the number of monthly payments left unpaid, the rule itself calls for a jury trial on damages. This court has no choice but to rule that the court should have allowed a trial to a jury solely on the amount of damages.

The judgment is affirmed as to the issue of striking the appellant's pleadings, is reversed and remanded on the issue of assessment of damages, and is reversed for a trial by jury as to the amount of damages.

All concur.